VERNON AI and SANDRA FUKUHARA, Plaintiffs-
Appellees, *v.* FRANK HUFF AGENCY, LTD., a Hawaii
corporation, Defendant-Appellant

NO. 7039

MARCH 6, 1980

RICHARDSON, C.J., OGATA, MENOR, JJ.,
RETIRED JUSTICE MARUMOTO AND CIRCUIT JUDGE LUM,
ASSIGNED BY REASON OF VACANCIES

## OPINION OF THE COURT BY LUM, CIRCUIT JUDGE

This is an interlocutory appeal by defendant-appellant, Frank Huff Agency, Ltd., from the order of the circuit court granting partial summary judgment for plaintiffs-appellees, Vernon Ai and Sandra Fukuhara. We affirm in part and reverse and remand in part.

### FACTS AND PROCEEDINGS BELOW

On August 2, 1974, plaintiffs executed and delivered to defendant, a collection agency, a promissory note payable in the amount of $2,061.76. The promissory note, which was

prepared by defendant collection agency, was given in satisfaction of a default judgment earlier obtained by defendant against plaintiff Ai; the judgment amount was $1,293.39, which included an award of attorney's fee of $252.62. The note was also given in satisfaction of certain other unliquidated indebtedness owed by plaintiff Ai to Beneficial Finance Company of Hawaii and Dial Finance Company of Hawaii. The promissory note provided that should plaintiffs default on the note, and should the note be "placed in the hands of an attorney for collection," plaintiffs would "pay attorney's fees at the rate of 33-1/3% of the amount due thereon, whether suit be instituted or not."

On June 23, 1976, after making 19 payments totalling $855.00, plaintiffs filed a Complaint for Declaratory Judgment in three counts.[1] Count I alleged that defendant, in violation of HRS §§ 443-44(8) and 480-2,[2] had represented in the August promissory note that the existing obligation of the plaintiffs might be increased by the addition of attorney's fees when in fact such fees could not legally be added to the existing obligation. Plaintiffs based Count I on the 25% limitation on attorney's fees against a debtor permitted only after the filing of suit under HRS § 443-23,[3] and the total statutory

---

[1] Only Count I is involved in this appeal. Count II is being held in abeyance pending disposition of this appeal. Appellees have withdrawn Count III.

[2] HRS § 443-44 provides in relevant part that:
No collection agency shall use . . . any conduct which is described as follows:
. . . .

(8) Any representation that an existing obligation of the debtor or alleged debtor may be increased by the addition of attorney's fees, investigation fees, service fees, and any other fees or charges when in fact such fees or charges may not legally be added to the existing obligations. . . .
HRS § 480-2 states that:
Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

[3] HRS § 443-23 states that:
A licensee shall not collect, or attempt to collect, any collection fee or attorney's fee or commission from any debtor; provided, however, attorney's fee or commission may be collected after filing of a suit against any debtor and such fee or commission shall not be in excess of twenty-five per cent of the unpaid principal balance.

disallowance of attorney's fees under HRS § 607-17 where an instrument in writing which provides for payment of an attorney's fee contains within its principal amount any attorney's fee from a prior debt.[4]

On September 22, 1977, plaintiffs filed a motion for summary judgment on Count I. The court subsequently granted plaintiffs' motion. The court concluded that Frank Huff committed a per se violation of HRS § 443-44(8) when it obtained from plaintiffs a promissory note providing for an attorney's fee in the amount of 33-1/3% of the unpaid principal whether or not suit was filed. The court recognized that, pursuant to HRS § 443-47,[5] the commission by a collection agency of a practice prohibited by Chapter 443 is to be characterized as an unfair or deceptive act or practice for the purpose of HRS § 480-2; it accordingly decreed that the promissory note was null, void and unenforceable at law or in equity under HRS § 480-12,[6] and awarded damages to plaintiffs in the amount of $1,000.00 plus costs as provided by HRS § 480-13(a)(1).[7] Frank Huff timely appeals from the grant of partial summary judgment.

---

[4] HRS § 607-17 provides in pertinent part that:
  Any law to the contrary notwithstanding, no . . . attorney's fee shall be allowed to the plaintiff by any court:
  . . . .
  (2) If prior to or at the time the debt was incurred, the debtor did sign an instrument in writing which provided for the payment of an attorney's fee and such instrument in writing contains within its principal amount any attorney's fee from a prior debt.

[5] HRS § 443-47 states that:
  A violation of this part by a collection agency shall constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce for the purpose of section 480-2.

[6] HRS § 480-12 provides that:
  Any contract or agreement in violation of this chapter is void and is not enforceable at law or in equity.

[7] HRS § 480-13 provides in relevant part that:
  (a) Any person who is injured in his business or property by reason of anything forbidden or declared unlawful by this chapter:
  (1) May sue for damages sustained by him, and, if the judgment is for the plaintiff, he shall be awarded a sum not less than $1,000.00 or three-fold damages

## OPINION

Under H.R.C.P. Rule 56(c), a summary judgment will be rendered only if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Lau v. Bautista,* 61 Haw. 144, 146-47, 598 P.2d 161, 163 (1979); *City and County of Honolulu v. Toyama,* 61 Haw. 156, 158, 598 P.2d 168, 170-71 (1979); *Hunt v. Chang,* 60 Haw. 608, 618, 594 P.2d 118, 124 (1979). *See* Moore's Federal Practice ¶ 56.17[68] at 56-1100 (2d ed. 1976).

Although defendant asserts that numerous factual questions were presented to the trial court which precluded disposition by summary judgment, upon review of the record, we have concluded that there is no genuine issue of a material fact. We therefore turn to an examination of the legal issues in this case.

## I. STANDING

Plaintiffs, claiming a deceptive trade practice in violation of HRS § 480-2, sue for damages under § 480-13.[8] Defendant contends that plaintiffs, as private persons, lack standing to sue for such relief.[9] Defendant points to sections of Chapter 480 which specifically confer to the attorney general and director of the office of consumer protection enforcement

---

by him sustained, whichever sum is the greater, and reasonable attorneys fees together with the cost of suit; provided that no showing that the proceeding or suit would be in the public interest (as these terms are interpreted under section 5(b) of the Federal Trade Commission Act) is necessary when the party against whom the proceeding or suit is brought is a merchant as that term is defined in chapter 490. . . .

[8] *See* note 7 *supra.*

[9] Defendant does not specifically address plaintiffs' prayer for a declaratory judgment that the promissory note is void and unenforceable under HRS § 480-12. We find, in any event, that plaintiffs have standing to sue for such relief by virtue of HRS § 632-1.

power over violations of § 480-2 as conclusive evidence that the legislature had not intended individual enforcement of § 480-2. We disagree.

HRS § 480-13 authorizes an action for damages to "[a]ny person who is injured in his business or property by reason of *anything forbidden or declared unlawful by this chapter* [chapter 480]." (Emphasis added.) To exclude HRS § 480-2 from the impact of a private action for damages, as defendant would have us do, is clearly contrary to the plain wording of the statute.[10] Nor are we prepared by judicial construction to weaken the efficacy or expanse of private enforcement under the Hawaii antitrust laws. *See Radovich v. National Football League,* 352 U.S. 445, 454 (1957); *Flintkote Co. v. Lysfjord,* 246 F.2d 368, 398 (9th Cir.), *cert. denied,* 355 U.S. 835 (1957).

Defendant notes, however, that even if an individual may sue for a violation of HRS § 480-2, a private plaintiff must allege and prove that he was injured in his business or property before damages will be assessed under § 480-13. Citing *Hawaii v. Standard Oil Co.,* 405 U.S. 251 (1972), and *Weinberg v. Federated Department Stores, Inc.,* 426 F.Supp. 880 (N.D. Cal. 1977), *appeal docketed,* No. 77-1547, defendant contends that standing is limited by the term "business or

---

[10] We note that even were sufficient ambiguity present to require resort to legislative history, defendant's theory that the legislature did not intend the private enforcement of HRS § 480-2 is unsupportable. Reporting on H.B. No. 136, the 1965 amendment to the Hawaii Antitrust Act adding HRS § 480-2, the House Standing Committee on Housing and Consumer Protection noted that:

The Hawaii Antitrust Act now contains appropriate enforcement provisions, including authority to the Attorney General to bring proceedings to enjoin any violations of the provisions of the act. The amendment of that act, as provided by H.B. No. 136, would make all of its enforcement provisions, except the criminal provisions, applicable to the amendment.

House Comm. on Housing and Consumer Protection, S.C. Rep. No. 55, 3d Leg., Reg. Sess., House Journal at 538 (1965). HRS § 480-13, providing for individual enforcement proceedings, was then in effect. The legislature, moreover, has amended § 480-13 two times subsequent to the enactment of § 480-2, and in both instances clearly indicated that such amendments were designed to facilitate private action against unfair or deceptive trade practices. *See* Senate Judiciary Comm., S.C. Rep. No. 703-74, 7th Leg., Reg. Sess., Senate Journal at 1021 (1974); Senate Comm. on Consumer Protection and Criminal Revision, S. C. Rep. No. 600, 5th Leg., Reg. Sess., Senate Journal at 1111 (1969).

property" to persons who allege a commercial or competitive injury. Defendant accordingly argues that plaintiffs lacked standing to sue for treble damages under § 480-13 because plaintiffs as consumers had not been injured in their "business or property" within the meaning of the statute.

Defendant's position is not unexpectable in view of the scanty legislative direction provided by the framers of HRS § 480-13 as well as by the framers of § 4 of the Clayton Act, its federal counterpart.[11] In a recent decision of the United States Supreme Court, however, the question of whether consumers lacked standing to enforce the antitrust laws under such a provision was finally laid to rest. In *Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979), the Supreme Court once and for all rejected the argument that the phrase "business or property" meant "business activity or property related to one's business," stating that:

> That strained construction would have us ignore the disjunctive "or" and rob the term "property" of its independent and ordinary significance; moreover, it would convert the noun "business" into an adjective. In construing a statute we are obliged to give effect, if possible, to every word Congress used. *United States v. Menasche,* 348 U.S. 528, 538-539 (1955). Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise; here it does not. See *FCC v. Pacific Foundation*, 438 U.S. 727, 739-740 (1978). Congress' use of the word "or" makes plain that "business" was not intended to modify "property," nor was "property" intended to

---

[11] It should be remembered that it was the stated intent of the House and Senate conferees, in recommending passage of the Hawaii Antitrust Act, that:

wherever there are comparable provisions of the federal anti-trust laws and tests similar in language to those provided in this bill, it is intended that those decided federal cases applicable and relating to those provisions and tests will guide the interpretation and application of such terms and provisions of this bill in the light of the economic and business conditions of this State.

Conference Comm., C. C. Rep. No. 16, 1st Leg., Reg. Sess., House Journal at 1075 (1961).

modify "business." . . . We simply give the word "property" the independent significance to which it is entitled in this context. A consumer whose money has been diminished by reason of an antitrust violation has been injured "in his . . . property" within the meaning of § 4.

*Id*. at 2331.

Following the guidance and logic of *Sonotone*, we find that it is unnecessary for plaintiffs to allege commercial or competitive injury in order for plaintiffs to have standing under HRS § 480-13; it is sufficient that plaintiffs allege that injury occurred to personal property through a payment of money wrongfully induced. *See id*. at 2331-32, discussing with approval *Chattanooga Foundry and Pipe Works v. City of Atlanta*, 203 U.S. 390, 396 (1906). We accordingly find plaintiffs' allegation of injury in their property sufficient for standing purposes under § 480-13.

Defendant, however, raises a further issue of standing. As defendant properly notes, in order for plaintiffs to have standing to sue for damages under HRS § 480-13, it is necessary that there be present allegations adequate to show either that defendant "is a merchant as that term is defined in chapter 490" or "that the proceeding or suit would be in the public interest (as these terms are interpreted under section 5(b) of the Federal Trade Commission Act)."

In interpreting the public interest requirement under § 5 of the FTC Act, the United States Supreme Court has stated that:

the mere fact that it is to the interest of the community that private rights shall be respected is not enough to support a finding of public interest. To justify filing a complaint the public interest must be specific and substantial. Often it is so, because the unfair method employed threatens the existence of present or potential competition. Sometimes, because the unfair method is being employed under circumstances which involve flagrant oppression of the weak by the strong. Sometimes, because, although the aggregate of the loss entailed may be so serious and widespread as to make the matter one of

> public consequence, no private suit would be brought to stop the unfair conduct, since the loss to each of the individuals affected is too small to warrant it.

*FTC v. Klesner*, 280 U.S. 19, 28 (1929). The ways in which the public interest may be involved under *Klesner*, however, is not exclusive. *FTC v. Royal Milling Co.*, 288 U.S. 212, 216 (1933). We thus now consider whether plaintiffs' claim of a violation of HRS § 443-44(8) and 443-47 was a sufficient allegation of public interest for Ai and Fukuhara to obtain standing under HRS § 480-13.

Under the antitrust laws,[12] certain types of conduct are so prejudicial to the public interest that, as a matter of law, they may not be justified or held to be reasonable. *See Northern Pacific Railway Co. v. United States*, 356 U.S. 1, 5 (1958). As to such practices of per se illegality, the legislature has determined its own criteria of public harm and it is not for the courts to decide whether in an individual case public injury has actually occurred. *See Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 211 (1959). Thus, at least where a per se violation is claimed, "allegations adequate to show a violation and, in a private treble damage action, that plaintiff was damaged thereby are all the law requires." *Radiant Burners, Inc. v. Peoples Gas, Light & Coke Co.*, 364 U.S. 656, 660 (1961);[13] *see, e.g., Grand Union Co. v. FTC*, 300 F.2d 92, 99 (2d Cir. 1962).

---

[12] Although the public interest requirement is not a literal part of the federal antitrust laws, the doctrine that an allegation of public interest is essential to a complaint charging violation of the antitrust laws has been widely debated in the case law relevant to the Sherman and Clayton Acts. *See* E. Timberlake, Federal Treble Damage Antitrust Actions, Ch. 15 (1965). Judicial interpretations of the public interest doctrine in the context of the Sherman and Clayton Acts have thus proved helpful to our analysis.

[13] There appears to be confusion as to whether *Radiant Burners* has eliminated public injury as a separate element of all antitrust violations or whether the rule is simply applicable to cases of per se illegality. *See* Discussion of lower court decisions subsequent to *Radiant Burners* in ABA Antitrust Section, Antitrust Law Developments 265-67 (1975). Timberlake, for example, argues that the Supreme Court intended by *Radiant Burners* to abolish the public injury requirement only in per se

HRS § 480-2, as its federal counterpart in the FTC Act, was constructed in broad language in order to constitute a flexible tool to stop and prevent fraudulent, unfair or deceptive business practices for the protection of both consumers and honest businessmen.[14] The legislature, however, did not leave to the judiciary the unfettered discretion to independently determine in every case brought under § 480-2 whether a defendant's conduct had been "unfair or deceptive" within the comprehension of the statute. The legislature instead found it desirable to predetermine that violations of HRS Chapter 443 would constitute per se "unfair or deceptive acts or practices" for the purposes of § 480-2. *Cf. Dejay Stores, Inc. v. FTC*, 200 F.2d 865, 867 (2d Cir. 1952) (the FTC's conclusion that it is in the public interest to require that creditors should not use dishonest methods in collecting their debts is within its discretion); *Rothschild v. FTC*, 200 F.2d 39, 42 (2d Cir. 1952) (the fact that acts and methods deemed deceptive are used to trap delinquent debtors does not prevent such acts and methods from being against the public

---

cases. E. Timberlake, Federal Treble Damage Antitrust Actions, Ch. 15 (1965). Areeda, on the other hand, contends that

> the conclusion that conduct offends the antitrust laws is inherently a declaration that it offends the public interest. The public injury issue may reflect confusion concerning the definition of the substantive offense. A harmful effect upon the economy is sometimes an essential element of the antitrust violation. In that event, the private plaintiff — as well as the government plaintiff — must prove it. But where defendant's conduct is illegal without proof of market effects, the government would prevail merely by proving the conduct. The private plaintiff should also prevail in these circumstances — subject, of course, to proving direct injury to himself.

P. Areeda and D. Turner, II Antitrust Law ¶ 331c. (1978) (footnote omitted).

[14] In recommending passage of HRS § 480-2, the House Judiciary Committee quoted Congressional justification for the broad and general language of the Federal Trade Commission Act:

> It is impossible to frame definitions which embrace all unfair practices. There is no limit to human inventiveness in this field. Even if all known practices were specifically defined and prohibited, it would be at once necessary to begin over again. If Congress were to adopt the method of definition, it would undertake an endless task.

House Judiciary Comm., S.C. Rep. No. 267, 3d Leg., Reg. Sess., House Journal at 600 (1965). *See also* House Comm. on Housing and Consumer Protection, S.C. Rep. No. 55, 3d Leg. Reg. Sess., House Journal at 538 (1965).

interest). Since plaintiffs herein have supplied allegations adequate to show that such a per se violation of § 480-2 has occurred, we accordingly find that the public interest has been sufficiently made out to confer standing to plaintiffs under § 480-13.

## II. THE MERITS

HRS § 480-13 provides that:
Any person who is injured in his business or property by reason of anything forbidden or declared unlawful by this chapter . . . may sue for damages sustained by him . . . provided that no showing that the proceeding or suit would be in the public interest . . . is necessary when the party against whom the proceeding or suit is brought is a merchant. . . .
Thus, § 480-13 establishes four essential elements: (1) a violation of chapter 480; (2) injury to plaintiff's business or property resulting from such violation; (3) proof of the amount of damages; and (4) a showing that the action is in the public interest or that the defendant is a merchant.

Plaintiffs contend that the undisputed facts before the court below established each element of a prima facie claim under HRS § 443-44(8). An offense under § 443-44 constitutes a per se violation of HRS § 480-2 by virtue of § 443-47. Plaintiffs accordingly reason that sufficient proof of a violation of chapter 480 was provided the lower court to justify the grant of damages under HRS § 480-13.

HRS § 443-44(8) prohibits a collection agency from making any representation that an existing obligation of a debtor may be increased by the addition of attorney's fees when in fact such fees may not legally be added to the existing obligation of the debtor.[15] By permitting that an attorney's fee may be collected only "after filing of a suit against any debtor and

---

[15] *See* note 2 *supra*.

such fee . . . shall not be in excess of twenty-five per cent of the unpaid principal balance [,]'' HRS § 443-23 provides for an outside limit of 25% on the amount of attorney's fees a debtor may be required to pay.[16] The promissory note drafted by the defendant herein, however, represented that 33-1/3% of the amount due on the note would be collectible from the debtor in the event of default. The note further required that attorney's fees be paid by the debtor in default "whether suit be instituted or not.'' Since § 443-23 denies collection of attorney's fees unless proceedings are in fact brought against a debtor, and since such fees are, in any event, limited to 25% of the unpaid principal balance, attorney's fees as required of plaintiffs by defendant's promissory note could not legally be added to the existing obligation of the debtor. The representation that the obligation of the debtor could be so increased was therefore in violation of § 443-44(8).[17]

While proof of a violation of chapter 480 is an essential element of an action under § 480-13, the mere existence of a violation is not sufficient *ipso facto* to support the action; forbidden acts cannot be relevant unless they cause private damage. *See* E. Timberlake, *Federal Treble Damage Antitrust Actions* § 3.04 (1965). Plaintiffs accordingly allege private injury in having made payments to defendant under a void promissory note.

---

[16] *See* note 3 *supra*.

[17] It is further to be noted that attorney's fees are totally disallowed to a plaintiff by HRS § 607-17:

> [i]f prior to or at the time the debt was incurred, the debtor did sign an instrument in writing which provided for the payment of an attorney's fee and such instrument in writing contains within its principal amount any attorney's fee from a prior debt.

Since the debtors herein did in fact sign a promissory note which provided for an attorney's fee pyramided upon an attorney's fee from a prior debt, the defendant-creditor would have been unable to collect the newly provided attorney's fee in any action against the debtors. The representation that the obligation of the debtors could be increased by an attorney's fee prohibited under HRS § 607-17 was therefore also in violation of § 443-44(8).

We agree with plaintiffs that the clause providing for the payment of attorney's fees violates chapter 480 and is therefore unenforceable. We do not agree, however, that the entire note must be held unenforceable.

The wording of HRS § 480-12[18] might, on first reading, appear to suggest that any contract containing an illegal provision under the Hawaii antitrust laws should be held unenforceable in its entirety. It is well settled under ordinary contract law, however, that a partially illegal contract may be upheld if the illegal portion is severable from the part which is legal. *See* 6A Corbin, Contracts § 1527 (1962); *Vineberg v. Brunswick Corp.*, 391 F.2d 184, 186 (5th Cir. 1968). The "divisibility" rule does not lose its vitality where the contract provision is illegal by virtue of the antitrust laws. *See, e.g., Sealy Mattress Co. of Southern California v. Sealy, Inc.*, 346 F.Supp. 353, 359 (N.D. Ill. 1972).

In *Mailand v. Burckle*, 20 Cal. 3d 367, 572 P.2d 1142, 143 Cal. Rptr. 1 (1978), the California Supreme Court was recently confronted with the question of whether a provision illegal under the California antitrust laws should result in an entire franchise agreement being declared void. Section 16722 of the Cartwright Act provided that:

Any contract or agreement in violation of this chapter is absolutely void and is not enforceable at law or in equity.

Noting that the offensive provision could be excised from the franchise agreement "without doing violence to its essential objects," the court upheld the remainder of the contract. 20 Cal. 3d at 384, 572 P.2d at 1152, 143 Cal. Rptr. at 11. Thus, under a provision of the California antitrust laws almost identical to HRS § 480-12, the rule of divisibility was recognized as remaining intact.

The federal antitrust laws do not contain a provision similar to HRS § 480-12. It is instructive, however, that the rule of divisibility has been employed by the United States Supreme Court in enforcing the Sherman Act.

---

[18] *See* note 6 *supra*.

Section 1 of the Sherman Act provides that:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal. . . .

Although section 1 speaks in terms of entire contracts, the United States Supreme Court, in *Kelly v. Kosuga*, 358 U.S. 516 (1959), apparently did not find such language a hindrance in applying the rule of divisibility. In finding that a violation of the Sherman Act could not be employed by petitioner to void an entire contract, the Court stated:

Past the point where the judgment of the Court would itself be enforcing the precise conduct made unlawful by the Act, the courts are to be guided by the overriding general policy, as Mr. Justice Holmes put it, "of preventing people from getting other people's property for nothing when they purport to be buying it." . . .

And while analysis in terms of "divisibility" or some other verbal formula may well be circular, see 6 Corbin, Contracts, § 1520, in any event, where, as here, a lawful sale for a fair consideration constitutes an intelligible economic transaction in itself, we do not think it inappropriate or violative of the intent of the parties to give it effect even though it furnished the occasion for a restrictive agreement of the sort here in question.

*Id.* at 521.

It thus appears that the overwhelming weight of authority, both in ordinary contract law and in the antitrust context, supports a severance of the illegal provision for attorney's fees under the Frank Huff promissory note. Finding that the provision for attorney's fees in this case may be excised from the promissory note without doing violence to the note's essential objects, we accordingly sever the illegal portion and enforce the remainder of the contract. In view of the continuing obligation of the plaintiffs to make payments under the note severed of its offending clause, and in view of the fact plaintiffs have actually made no payments beyond the amount of their existing obligation, we find no legal injury to plaintiffs

cognizable under HRS § 480-13; hence, plaintiffs were not entitled to an award of $1,000.

Although damages are not recoverable by plaintiffs under chapter 480, it must be reemphasized that the provision for attorney's fees is void and unenforceable at law or in equity by virtue of section 480-12. A declaratory judgment as to the offending clause is thus in order.

The judgment of the trial court is accordingly reversed in part and the case is remanded for further proceedings consistent with this opinion.

*Stuart H. Oda* for defendant-appellant.

*Dennis Niles* (Legal Aid Society of Hawaii of counsel) for plaintiffs-appellees.