**NOVARTIS CORPORATION and Novartis Consumer Health, Inc., Petitioners,**

v.

**FEDERAL TRADE COMMISSION, Respondent.**

No. 99–1315.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 8, 2000.

Decided Aug. 18, 2000.

Michael L. Denger argued the cause for the petitioners. Miguel A. Estrada was on brief for the petitioners.

Daniel J. Popeo and Gene C. Schaerr were on brief for amicus curiae Washington Legal Foundation.

Thomas A. Thompson was on the brief for amicus curiae Grocery Manufacturers of America, Inc.

John F. Daly, Assistant General Counsel, Federal Trade Commission, argued the cause for the respondent. Debra A. Valentine, General Counsel, Federal Trade Commission, was on brief for the respondent.

Before: WILLIAMS, HENDERSON and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Novartis Corporation and Novartis Consumer Health, Inc. (collectively Novartis), subsidiaries of Novartis Holding AG, petition for review of a Federal Trade Commission (FTC, Commission) cease-and-desist order. The Commission found that Novartis's advertisements of its Doan's back pain remedies were "deceptive" in violation of the Federal Trade Commission Act (Act), 15 U.S.C. §§ 41 et seq., because they contained an unsubstantiated implied claim of superior efficacy. Accordingly, it ordered Novartis to cease the deceptive advertising and to include in future Doan's advertisements a corrective disclaimer of superiority. For the reasons set out below, we reject Novartis's challenge both to the FTC's finding of deceptiveness and to the corrective advertising remedy it provided.

## I.

Doan's over-the-counter back pain products have been marketed for over ninety years. After Novartis's predecessor-in-interest Ciba–Geigy Corporation (Ciba), and Ciba's subsidiary, Ciba Self–Medication, Inc.,[1] purchased Doan's in 1987, Ciba conducted a marketing study which concluded: "Doan's has a weak image in comparison to the leading brands of analgesics and would benefit from positioning itself as a more effective product that is strong enough for the types of backaches sufferers usually get." Joint Appendix (JA) 194–95. To strengthen the Doan's image, Ciba undertook two measures. First, Ciba instituted an aggressive television and newspaper advertising campaign, which lasted from May 1988 through June 1996. The new advertisements characterized Doan's as a remedy effective specifically for back pain and as containing a special ingredient (magnesium salicylate) not found in other over-the-counter analgesics. At least some of the advertisements displayed images of competing over-the-counter pain remedies. Second, Ciba expanded the Doan's product line, introducing "Extra Strength Doan's" in late 1987 (renaming its existing product "Regular Strength Doan's") and "Doan's P.M." in September 1991.

On June 21, 1998 the FTC issued an administrative complaint alleging Ciba's advertisements violated section 5 of the Act by making an unsubstantiated claim that Doan's products, because of their special ingredients, were more effective at relieving back pain than other over-the-counter products. Following a trial the administrative law judge (ALJ) issued a decision dated March 9, 1998 in which he found that the advertisements were deceptive in violation of sections 5 and 12 of the Act, which prohibit, respectively, unfair methods of competition and unfair or deceptive acts or practices generally, 15 U.S.C. § 45, and in particular dissemination of false advertisements, id. § 52.

1. Novartis was formed in 1996 through the     merger of Ciba–Geigy AG and Sandoz AG.

Based on these findings the ALJ issued an order prohibiting Novartis from asserting unsubstantiated claims of superior efficacy for Doan's products. The ALJ rejected the FTC's request for corrective advertising, finding so "drastic" a remedy unjustified. Novartis appealed the deceptiveness finding to the Commission and the FTC's counsel cross-appealed the denial of corrective advertising.

In an opinion issued May 13, 1999 the Commission affirmed the ALJ's determination that the advertising claims were deceptive in violation of sections 5 and 12 of the Act. Like the ALJ, the Commission concluded the advertisements' dual claims—that Doan's products are particularly effective for relieving back pain and that they contain an active ingredient not found in other over-the-counter analgesics—while each literally true, in combination implied that Doan's was superior to other analgesics in relieving back pain because of its special ingredient, for which claim there was no substantiation. The Commission reversed the ALJ's corrective advertising determination, concluding such a remedy was warranted because the Doan's advertisements had created or reinforced consumer misbelief in Doan's superior efficacy and the misbelief was likely to continue. Accordingly, the Commission ordered Novartis to include in future advertisements the following disclaimer: "Although Doan's is an effective pain reliever, there is no evidence that Doan's is more effective than other pain relievers for back pain." Commission Order at 3. The Commission ordered that the remedy "continue for one year and until respondent has expended on Doan's advertising a sum equal to the average spent annually during the eight years of the challenged campaign," subject to an exemption "for any television or radio advertisement of 15 seconds or less in duration." *Id.*[2] Novartis has petitioned for review of both the deception finding and the corrective advertising directive.

## II.

■ Novartis first challenges the Commission's finding that the advertisements were "deceptive" in violation of sections 5 and 12 of the Act. The FTC applies a three-pronged test to determine deceptive advertising, asking whether "(1) a claim was made; (2) the claim was likely to mislead a reasonable consumer and (3) the claim was material." Commission Decision (Comm'n Dec.) at 5 (citing, *e.g., In re Cliffdale Assocs., Inc.,* 103 F.T.C. 110, 165 (1984)); *see generally* 1983 FTC Policy Statement on Deception (Deception Statement), *appended to Cliffdale Assocs.,* 103 F.T.C. at 176–184. Novartis does not dispute that the Doan's advertisements made the implied claim charged or that it is likely to deceive but does contest the Commission's finding that the claim was material. We conclude the materiality finding is adequately supported.

■ Under the Commission's test, a material claim is one that "involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Cliffdale Assocs.,* 103 F.T.C. at 165. The Commission has historically *presumed* materiality for certain categories of claims: (1) all express claims, (2) intentional implied claims and (3) claims that "significantly involve health, safety, or other areas with which the reasonable consumer would be concerned," including a claim that "concerns the purpose, safety, efficacy, or cost of the product or service," its "durability, performance, warranties or quality" or "a finding by another agency regarding the product." Deception Statement, 103 F.T.C. at 182 (footnotes omitted). The Commission applied the presumption here because it found the implied claim was intentional and involved both a health mat-

---

**2.** The Commission determined "that the corrective message would be difficult to communicate in such a short ad without unduly restricting Respondent's ability to also convey its advertising message." Comm'n Dec. 35.

ter and the products' purpose and efficacy. Nevertheless, given "the evidence adduced by Novartis," the Commission deemed it "necessary to look beyond a simple presumption of materiality" to the particular facts. Comm'n Dec. 20. After reviewing the evidence, the Commission concluded: "The extensive record amassed in this proceeding strongly confirms the common-sense proposition that efficacy is a pivotal consideration for consumers in selecting an analgesic, and that claims of superior efficacy are highly material to those consumer choices." Commission Dec. at 20. The Commission's finding of materiality is substantially supported by the evidence it cited, including the opinions of both sides' experts, *see* JA 831, 759, 956, and numerous consumer and marketplace studies, *see* JA 640, 329, 270, 282. *See* Comm'n Dec. 14–15. Accordingly, we reject Novartis's challenge[3] and uphold the Commission's finding of an implied deceptive claim in violation of the Act. *See Thompson Med. Co. v. FTC,* 791 F.2d 189, 196 (D.C.Cir. 1986), *cert. denied,* 479 U.S. 1086, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987) (court's "task" is "to determine if the Commission's finding is supported by substantial evidence on the record as a whole").[4]

## III.

Next, Novartis asserts the corrective advertising remedy is without sufficient record support. In *Warner-Lambert Co. v. FTC,* 562 F.2d 749, 762 (D.C.Cir. 1977), *cert. denied,* 435 U.S. 950, 98 S.Ct. 1575, 55 L.Ed.2d 800 (1978), we affirmed the Commission's statutory authority to impose corrective advertising and approved the standard it adopted for doing so:

> (I)f a deceptive advertisement has played a substantial role in creating or reinforcing in the public's mind a false and material belief which lives on after the false advertising ceases, there is clear and continuing injury to competition and to the consuming public as consumers continue to make purchasing decisions based on the false belief. Since this injury cannot be averted by merely requiring respondent to cease disseminating the advertisement, we may appropriately order respondent to take affirmative action designed to terminate the otherwise continuing ill effects of the advertisement.

*Warner-Lambert,* 562 F.2d at 762 (quoting *In re Warner–Lambert Co.,* 86 F.T.C. 1398, 1499–1500 (1975)) (alteration in original). This language "dictates two factual inquiries: (1) did [respondent's] advertisements play a substantial role in creating or reinforcing in the public's mind a false belief about the product? and (2) would this belief linger on after the false advertising ceases?" *Warner-Lambert,* 562 F.2d at 762. While the evidence is thin and somewhat fragmentary, we have weighed the expert testimony and, taken as a whole, we find that the record supports the Commission's conclusion.

---

3. In contesting the finding, Novartis argues most vigorously that materiality of the implied claim is belied by the fact that Doan's market share grew little or none during the relevant period. The FTC's definition of materiality, however, embraces any claim that is "likely to mislead a reasonable consumer." There is no requirement of actual deceit. If a claim is material because likely to deceive, it is not rendered otherwise simply because it is unsuccessfully advertised.

4. Novartis contends we should review the Commission's findings *de novo,* relying on *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984), in which the Supreme Court rejected the "clearly erroneous" standard for appellate review of the district court's "actual malice" finding in a defamation case in favor of "independent appellate review" to "determine whether the record establishes actual malice with convincing clarity." 466 U.S. at 511, 104 S.Ct. 1949. This court, however, has already concluded that *Bose* "does not change the standard of review in deceptive advertising cases." *FTC v. Brown & Williamson Tobacco Corp.,* 778 F.2d 35, 41 n. 3 (D.C.Cir.1985); *accord Kraft, Inc. v. FTC,* 970 F.2d 311, 316–18 (7th Cir. 1992).

On the standard's first prong, the Commission concluded the evidence demonstrated that the challenged advertising played a "substantial role" in creating or reinforcing a false belief based almost exclusively on the opinion of the FTC counsel's expert witness Michael B. Mazis that the Doan's advertising campaign created a continuing belief in the products' superiority. Mazis, in turn, based his opinion primarily on two studies: the "Attitude and Usage Telephone Study" (A&U Study) commissioned by Ciba in 1987, before the implied claim advertising campaign, and the study conducted by NFO Research, Inc. (NFO Study) in 1996, after the campaign ended. Relying on Mazis's comparison of the study results, the Commission found that the A&U Study "showed that Doan's had a weak image" and that the NFO Study "show[ed] that in 1996, a disproportionately high percentage of Doan's users and aware non-users believed that Doan's was more effective than other OTC pain relievers for back pain relief." Comm'n Dec. at 25–26.[5] The Commission relied particularly on Mazis's testimony that a comparison of the two studies showed that " 'superior efficacy' beliefs for Doan's relative to Advil, Bayer, and Tylenol increased (between 0.5 and 1.25 scale points on a seven-point scale) between 1987 and 1996 relative to other brands, as did beliefs that Doan's has a 'special ingredient' (between 0.75 and 1.875 points),"

while "[a]t the same time, consumer beliefs that Doan's 'is safe to use'—a claim not made in its advertising campaign—declined in rough proportion to the other products." Comm'n Dec. 26.[6] We conclude that Mazis's opinion testimony constitutes substantial evidence in support of the Commission's holding that the Doan's advertisements created or reinforced false beliefs in the products' efficacy.

We also believe that the record sufficiently supports the Commission's finding that the advertisements' effects are likely to linger. The Commission rested its finding primarily on the conclusion of the NFO Study that six months after the advertising ended in 1996, "77% of Doan's users and 45% of those who were aware of but did not use Doan's believed that the product was superior to other brands for the treatment of back pain." Comm'n Dec. 29. Characterizing these percentages as "disproportionately high for both groups relative to other brands," the Commission concluded that "at least six months after the challenged ads stopped being aired, their effect continued to linger." Comm'n Dec. 29. We cannot say this was an irrational inference from the study data on which the Commission relied.[7]

## IV.

■ Finally, Novartis challenges the corrective remedy on the ground that it

---

5. Based on Mazis's testimony, the Commission also found that the Brand Equity Study, conducted by Ciba in 1993 (more than halfway through the 8–year campaign), "provides strong evidence that the advertising had already influenced consumer beliefs." Understandably, however, neither Mazis nor the Commission placed much emphasis on this study. To determine whether the advertising campaign produced an increased perception of Doan's superiority that will continue after its termination, the crucial points to compare are the start and end of the campaign. *See* JA 782–83 (Mazis explaining that, by comparing A&U and NFO studies, "we can see, 'Did beliefs change?' ").

6. While Mazis found that the A&U and NFO studies showed only "a slight increase in be-

liefs about Doan's from 1987 to 1996," JA 788, he opined that even a slight increase was significant because consumer belief in the efficacy of the other three pain-reliever brands studied went down during the same period.

7. The Commission also relied on three circumstances to infer the advertising's lingering effect: "[T]he challenged claims were (1) very salient to consumers (because superior efficacy is among the primary considerations for a consumer in selecting a back pain remedy), (2) clearly and consistently conveyed by the challenged ads, and (3) an integral part of an eight-year campaign," in which Novartis "spent approximately $65,000,000 disseminating these claims." Comm'n Dec. 30.

impermissibly restricts Novartis's free speech in violation of the First Amendment. We perceive no First Amendment impediment to the remedy.

In *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 563, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), the United States Supreme Court set out the standards applicable to governmental restrictions on commercial speech:

> The State must assert a substantial interest to be achieved by restrictions on commercial speech. Moreover, the regulatory technique must be in proportion to that interest. The limitation on expression must be designed carefully to achieve the State's goal. Compliance with this requirement may be measured by two criteria. First, the restriction must directly advance the state interest involved; the regulation may not be sustained if it provides only ineffective or remote support for the government's purpose. Second, if the governmental interest could be served as well by a more limited restriction on commercial speech, the excessive restrictions cannot survive.

447 U.S. at 563, 100 S.Ct. 2343. The remedy here advances precisely the "interest involved," namely the avoidance of misleading and deceptive advertising. Further, as this court noted in *Warner-Lambert*, whether a corrective remedy imposes a restriction "greater than necessary to serve the interest involved ... goes to the appropriateness of the order" under the Commission's two-pronged standard addressed above.*Warner-Lambert*, 562 F.2d at 758. Because the standard has been satisfied here, as it was in *Warner-Lambert*, we conclude the Commission's remedy is not overly broad.

For the preceding reasons Novartis's petition for review is

*Denied.*