**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WATOSHINA LYNN COMPTON,
*Plaintiff-Appellant*,

v.

COUNTRYWIDE FINANCIAL
CORPORATION; COUNTRYWIDE
HOME LOANS, INC.; BANK OF
AMERICA CORPORATION; BAC
HOME LOANS SERVICING, LP; U.S.
BANK NATIONAL ASSOCIATION AS
TRUSTEE, for CSMC Mortgage-
Backed Pass Through Certificates,
Series 2006-7; U.S. BANK N.A.;
DOES, JOHN AND MARY DOES, 1–10,
*Defendants-Appellees*.

No. 11-17158

D.C. No.
1:11-cv-00198-
SOM-BMK

OPINION

Appeal from the United States District Court
for the District of Hawaii
Susan Oki Mollway, Chief District Judge, Presiding

Argued and Submitted
June 11, 2014—Honolulu, Hawaii

Filed August 4, 2014

Before: William A. Fletcher, Sandra S. Ikuta,
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Ikuta

## SUMMARY[*]

### Hawaii Consumer Law

The panel reversed the district court's Fed. R. Civ. P. 12(b)(6) dismissal of a borrower's claim brought under Haw. Rev. Stat. § 480-2(d) alleging unfair and deceptive acts by Bank of America Corporation, and remanded.

The panel held that when a district court evaluates whether a borrower's complaint states a claim under Haw. Rev. Stat. §§ 480-2 and 480-13 against a lender, the district court need only address whether the complaint adequately alleged that the lender used unfair or deceptive acts in its relationship with the borrower, without looking to negligence law to determine whether the lender breached a common law duty of care.  The panel held that the district court erred in dismissing the borrower's claim solely on the ground that the borrower failed to allege that the lender exceeded its role as a lender and owed an independent duty of care to the borrower.  The panel held that the complaint adequately alleged under Hawaii law unfair and deceptive acts by Bank of America, and injury resulting in damage to the borrower, to withstand a motion to dismiss.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

James Harry Fosbinder, Ivey Fosbinder Fosbinder, LLC, Wailuku, Hawaii, for Plaintiff-Appellant.

Dennis Peter Maio (argued) and Rosalie Euna Kim, Reed Smith LLP, San Francisco, California, for Defendants-Appellees.

**OPINION**

IKUTA, Circuit Judge:

Watoshina Lynn Compton appeals the district court's dismissal of her claim under section 480-2 of the Hawaii Revised Statutes, which authorizes consumers to "bring an action based upon unfair or deceptive acts or practices." Haw. Rev. Stat. § 480-2(d) (referred to herein as a UDAP claim). Because Compton's complaint adequately alleges that unfair and deceptive acts by Bank of America Corporation (BAC)[1] caused an injury resulting in damages, we reverse the district court.

I

We assume the following facts taken from the complaint are true for the purpose of our review. *See Metzler Inv.*

---

[1] Although the allegations in the complaint refer to various entities associated with BAC, such as BAC Home Loan Servicing, L.P., Countrywide Financial Corporation, and Countrywide Home Loans, Inc., for convenience we refer to these entities as BAC.

*GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1055 n.1 (9th Cir. 2008).

In 2003, Compton purchased a piece of real property through a privately funded construction loan. Compton later sought to refinance this loan and, in May 2006, executed a promissory note and mortgage giving Countrywide Home Loans, Inc., a security interest in the property. After Compton refinanced her mortgage and before the events at issue in this case, BAC acquired Countrywide.

After making timely loan payments for more than two years, Compton began suffering financial difficulties due to a decline in her fiberglass pool business. In August 2008, while still making timely payments, Compton contacted BAC to inquire about modifying her loan to lower the monthly payments. The BAC representative informed her that she would not qualify for a loan modification unless she was at least 30 days behind on her loan payments. Compton continued making timely payments for another eight months.

In May 2009, Compton stopped making loan payments and subsequently applied for a loan modification. According to her complaint, Compton's simple request to modify her loan resulted in a twenty-month entanglement in a Kafkaesque nightmare. Compton alleges that during the period from May 2009 to August 2010, she indefatigably sought a loan modification, while BAC intentionally frustrated her efforts, gave her misleading and erroneous advice, and imposed a never-ending list of new requirements and demands, despite knowing that a loan modification agreement would never be forthcoming. After Compton submitted her first loan modification application, the complaint alleges, a series of ever-changing BAC

representatives told Compton that the application was under review, continued to demand further documentation, failed to respond to her requests for updates, and finally told her that her loan modification application file had been closed. Her second loan modification application met with the same fate. In August 2009, BAC approved her third loan modification application and sent Compton a modification agreement. After Compton signed the modification agreement, had it notarized, and returned it to the bank, a BAC representative informed her that the agreement was incomplete due to a problem with the notary's signature block. Compton submitted re-notarized documents, but a BAC representative told Compton that the notary stamp was still deficient and she would have to submit a fourth modification application. After Compton submitted this fourth application, BAC representatives assured Compton that the bank would not commence foreclosure proceedings while the modification process was underway. Despite these repeated assurances, on August 26, 2010, Compton learned that a notice of foreclosure had been recorded against her property. When she contacted BAC regarding the foreclosure notice, she learned that her fourth application had been denied due to "lack of documentation" and her file closed on August 19, 2010. Several months later, when Compton tried to apply for a fifth time, a different representative informed Compton that the foreclosure notice rendered her ineligible for a loan modification.

On March 28, 2011, Compton filed a complaint in the district court alleging a UDAP claim under section 480-2(d), among other claims, and seeking injunctive relief and monetary damages. Compton alleged that BAC engaged in unfair and deceptive acts and practices, including: (1) misinforming her that only borrowers who were at least

30 days behind on their mortgage payments were eligible for loan modifications, although BAC does not, in fact, have such a requirement; (2) purposefully delaying her efforts to negotiate a loan modification and repeatedly terminating her loan modification requests; (3) misrepresenting the length of time it would take to process her loan modification, and knowingly and purposefully drawing out the modification process so that she would end up in foreclosure; and (4) misrepresenting that foreclosure proceedings would not be brought against her so long as her loan modification application remained pending, and then backdating paperwork so it would falsely appear that BAC commenced foreclosure proceedings only *after* denying her loan modification application. Compton alleges that as a result of BAC's misrepresentations and delays, she spent almost two years in a futile effort to modify her mortgage loan and, as a result of failing to obtain a modification, ended up in foreclosure.

The defendants filed a motion to dismiss Compton's complaint for failure to state a claim.

The district court granted the defendants' motion as to all claims. The district court dismissed Compton's UDAP claim without prejudice for failure to state a claim. *Compton v. Countrywide Fin. Corp.*, Civ. No. 11-00198 SOM-BMK, 2011 WL 2746807, at \*6 (D. Haw. July 13, 2011). Compton elected not to amend her complaint, and the district court entered final judgment on August 16, 2011. Compton has appealed the judgment only as to the dismissal of her UDAP claim.

II

Hawaii enacted section 480-2 "in broad language in order to constitute a flexible tool to stop and prevent fraudulent, unfair or deceptive business practices for the protection of both consumers and honest businessmen." *Ai v. Frank Huff Agency, Ltd.*, 61 Haw. 607, 616 (1980), *overruled on other grounds by Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co.*, 81 Haw. 224 (1999). State courts construe this section liberally, *Haw. Cmty. Fed. Credit Union v. Keka*, 94 Haw. 213, 229 (2000), in light of the state legislature's intention to "'encourage those who have been victimized by persons engaging in unfair or deceptive acts or practices to prosecute their claim,' thereby affording 'an additional deterrent to those who would practice unfair and deceptive business acts,'" *Zanakis-Pico v. Cutter Dodge, Inc.*, 98 Haw. 309, 317 (2002) (quoting S.R. No. 600, at 1111 (1969) (Comm. Rep.); H.R. No. 661, at 882–83 (1969) (Comm Rep.)).

Under section 480-2(a), "unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Haw. Rev. Stat. § 480-2(a).[2] Hawaii courts have held that "[a] practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Balthazar v. Verizon Haw., Inc.*, 109 Haw. 69,

---

[2] Section 480-2(a) provides in full:

> Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

Haw. Rev. Stat. § 480-2(a).

77 (2005) (alteration in original) (quoting *Keka*, 94 Haw. at 228).

Although the statute does not define the term "deceptive," Hawaii courts construe it "in accordance with judicial interpretations of similar federal antitrust statutes." *Courbat v. Dahana Ranch, Inc.*, 111 Haw. 254, 261 (2006) (quoting Haw. Rev. Stat. § 480-3); *see also* Haw. Rev. Stat. § 480-2(b) (requiring courts to construe the statute with "due consideration" to FTC rules, regulations, and decisions). Under this interpretation, "a deceptive act or practice is '(1) a representation, omission, or practice[] that (2) is likely to mislead consumers acting reasonably under the circumstances [where] (3) [] the representation, omission, or practice is material.'" *Courbat*, 111 Haw. at 262 (alterations in original) (quoting *FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 63 (2d Cir. 2006)). "A representation, omission, or practice is considered 'material' if it involves 'information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.'" *Id.* (quoting *Novartis Corp. v. FTC*, 223 F.3d 783, 786 (D.C. Cir. 2000)). This inquiry is objective—the test is "whether the act or omission 'is likely to mislead consumers.'" *Id.* (quoting *Verity Int'l*, 443 F.3d at 63). Material misrepresentations made during the course of loan negotiations can constitute an unfair or deceptive act within the meaning of section 480-2(a). *See Keka*, 94 Haw. at 229.

Finally, the Hawaii Supreme Court has determined that "a loan extended by a financial institution is activity involving 'conduct of any trade and commerce.'" *Id.* at 227; *see* Haw. Rev. Stat. § 480-2(a) (making unfair or deceptive acts or practices unlawful only when they arise "in the conduct of any trade or commerce").

Section 480-13(b)(1) provides that "[a]ny consumer who is injured by any unfair or deceptive act or practice" that violates section 480-2 "[m]ay sue for damages sustained by the consumer." Haw. Rev. Stat. § 480-13(b)(1). "[L]oan borrowers are 'consumers' within the meaning of [the statute]." *Keka*, 94 Haw. at 227. To obtain relief under section 480-13(b)(1), a consumer must establish three elements: "(1) a violation of [section] 480-2; (2) injury to the consumer caused by such a violation; and (3) proof of the amount of damages." *Davis v. Wholesale Motors, Inc.*, 86 Haw. 405, 417 (Ct. App. 1997) (citing *Ai*, 61 Haw. at 617, and *Cieri v. Leticia Query Realty, Inc.*, 80 Haw. 54, 61–62 (1995)).

Although the statute does not define either "injury" or "damages," *see Zanakis-Pico*, 98 Haw. at 316, Hawaii courts have not set a high bar for proving these elements. The plaintiff must show only that the alleged violations of section 480-2(a) caused "private damage," *Kekauoha-Alisa v. Ameriquest Mortg. Co. (In re Kekauoha-Alisa)*, 674 F.3d 1083, 1092 (9th Cir. 2012) (quoting *Ai*, 61 Haw. at 618), and that the plaintiff's injury is "fairly traceable to the defendant's actions," *Flores v. Rawlings Co.*, 117 Haw. 153, 167 n.23 (2008) (quoting *Cieri*, 80 Haw. at 66). Because deceptive acts "do their damage when they induce action that a consumer would not otherwise have undertaken," a consumer who can show "a resulting injury" is entitled to damages even if the consumer has not actually consummated a particular transaction. *Zanakis-Pico*, 98 Haw. at 317. For instance, a consumer could recover damages for "out-of-pocket expenses for a money order, gasoline, parking, and wear and tear on [an] automobile that resulted from [an] unfair business

practice."**³**  *Id.* at 319 (citing *Wiginton v. Pac. Credit Corp.*, 2 Haw. App. 435, 444 (1981)).  A plaintiff's "allegation that he has, as a 'direct and proximate result' of [defendant's] violation [of section 480-2], 'sustained special and general damages' suffices to withstand a motion to dismiss under Rule 12(b)(6)."  *Jenkins v. Commonwealth Land Title Ins. Co.*, 95 F.3d 791, 799 (9th Cir. 1996); *see also Zanakis-Pico*, 98 Haw. at 330 (holding that a plaintiff adequately alleges special damages by claiming "special damages in such amounts as will be proved at trial").

III

We review de novo the district court's dismissal of a complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1040 (9th Cir. 2011).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[L]abels and conclusions" or "a formulaic recitation of the elements of a cause of action" do not suffice.  *Twombly*, 550 U.S. at 555.

---

**³** The Hawaii Supreme Court has held that emotional distress and other personal injury damages are not available under section 480-13(b)(1). *Zanakis-Pico*, 98 Haw. at 319.  "'[B]enefit-of-the-bargain' damages" and specific performance are not available unless a contract exists between the parties.  *Id.*

A

The district court gave two reasons for its conclusion that Compton failed to state a claim under sections 480-2 and 480-13. First, it stated that "lenders generally owe no duty to a borrower 'not to place borrowers in a loan even where there was a foreseeable risk borrowers would be unable to repay,'" *Compton*, 2011 WL 2746807, at \*6 (quoting *Marzan v. Bank of Am.*, 779 F. Supp. 2d 1140, 1152 (D. Haw. 2011)), and a lender has no duty to determine whether a borrower is qualified for a loan, *id.* This reasoning is not directly applicable to Compton's UDAP claim, which was based on allegations that BAC "made material [mis]representations and purposefully delayed Plaintiff's modification efforts," *id.* (internal quotation marks omitted), not on the theory that BAC had placed her in a loan for which she was not qualified.

Second, the district court stated that, "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Id.* (quoting *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096 (1991)). Under this reasoning, the district court implicitly held that Compton could not state a claim for unfair or deceptive acts and practices unless her complaint alleged that BAC owed her a duty of care, and that she could not make such an allegation absent a showing that BAC's conduct exceeded the scope of behaving as "a mere lender of money."

We disagree with the district court's rationale, which seems to be based on a long line of federal district court decisions holding that a lender's decision to approve a loan to

a borrower who could not afford the payments does not constitute a cognizable claim under sections 480-2 and 480-13, absent allegations that the lender exceeded the scope of its role as a lender of money and owed the borrower a duty of care. *See, e.g.*, *Teaupa v. U.S. Nat'l Bank N.A.*, 836 F. Supp. 2d 1083, 1099 (D. Haw. 2011) (relying on this theory to dismiss a UDAP claim for failure to state a claim); *Marzan*, 779 F. Supp. 2d at 1152 (same); *see also Swartz v. City Mortg., Inc.*, 911 F. Supp. 2d 916, 942 (D. Haw. 2012) (relying on this theory to grant summary judgment in favor of the lender); *Wood v. Greenberry Fin. Servs., Inc.*, 907 F. Supp. 2d 1165, 1184 (D. Haw. 2012) (same); *Stanton v. Bank of Am., N.A.*, 834 F. Supp. 2d 1061, 1082 (D. Haw. 2011) (same).

None of these cases is directly applicable to Compton's complaint, which did not allege that BAC allowed her to obtain a loan for which she was unqualified. It is understandable, however, how the district courts' reasoning in these prior cases misled the district court here. Had these courts applied the plain language of section 480-2, they might well have concluded that a lender's failure in the ordinary course of business to make an adequate assessment of a borrower's qualifications does not constitute an unfair or deceptive practice, although this precise question is not before us. But rather than take this straightforward approach, the opinions listed above (among others) rested their analysis on common law tort principles, reasoning that: (1) a lender generally "owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money," *Marzan*, 779 F. Supp. 2d at 1152 (quoting *Nymark*, 231 Cal. App. 3d at 1096); (2) therefore "lenders generally owe no duty to a borrower 'not to place borrowers in a loan

even where there was a foreseeable risk borrowers would be unable to repay,'" *id.* (quoting *McCarty v. GCP Mgmt., LLC*, Civ. No. 10-00133 JMS/KSC, 2010 WL 4812763, at *6 (D. Haw. Nov. 17, 2010)); and thus (3) absent an allegation that the lender owed the borrower a common law duty of care (which could not occur unless the lender exceeded its role as a lender), an allegation that the lender allowed an unqualified borrower to obtain a loan does not state a claim under sections 480-2 and 480-13, *see id.* Logically, this reasoning is based on the unstated premise that a lender cannot be held liable under sections 480-2 and 480-13 unless the lender owes the borrower a common law duty of care.

Contrary to this line of federal district court opinions, borrowers are not obliged to show that the lender owed the borrower a common law duty of care to state a claim under sections 480-2 or 480-13. Nothing in the plain language of sections 480-2 or 480-13 requires a plaintiff to make such an allegation. And we have not identified any decision of a Hawaii court interpreting sections 480-2 and 480-13 as imposing such a requirement. The Hawaii Supreme court's decision in *Keka*, 94 Haw. 213, is to the contrary. In considering a UDAP claim against a lender, *Keka* held that the borrowers raised a genuine issue of material fact regarding whether a violation of section 480-2 occurred simply by swearing in an affidavit that during loan negotiations the lender had misrepresented the interest rate that would apply to the loan. *Id.* at 228–29. *Keka*, therefore, strongly supports the conclusion that section 480-2 does not require a borrower to allege that a lender "exceed[ed] the scope of its conventional role as a mere lender of money," *Nymark*, 231 Cal. App. 3d at 1096, and thus may have owed the borrower an independent duty of care.

Accordingly, we conclude that district courts evaluating whether a borrower's complaint states a claim under sections 480-2 and 480-13 against a lender need only address whether the complaint adequately alleges that the lender used unfair or deceptive acts in its relationship with the borrower, without looking to negligence law to determine whether the lender breached a common law duty of care.  Rather than requiring proof of a common law duty of care, section 480-2 is better interpreted as imposing a *statutory* duty on lenders not to engage in "unfair or deceptive acts or practices in the conduct of any trade or commerce."  Haw. Rev. Stat. § 480-2(a).  Thus a borrower need only allege that a lender has breached that statutory duty (in a way that caused private damages) in order to state a claim under sections 480-2 and 480-13.  *See Davis*, 86 Haw. at 417.  While courts may well conclude that a borrower's allegation that a lender failed "to determine the creditworthiness and ability to repay by a borrower" does not breach the statutory duty imposed by section 480-2, *Marzan*, 779 F. Supp. 2d at 1152 (quoting *Sheets v. DHI Mortg. Co.*, Civ. No. 09-1030 LJO DLB, 2009 WL 2171085, at *4 (E.D. Cal. July 20, 2009)), a borrower's failure to allege that the lender's conduct occurred outside the course of ordinary lender activity or that the lender owed a duty of care to the borrower is not fatal to a UDAP claim.

B

Here, the district court dismissed Compton's UDAP claim solely on the ground that Compton failed to allege that BAC exceeded its role as a lender and owed an independent duty of care to Compton.  This reasoning was erroneous.  But because we may affirm the district court on "any ground supported by the record," *Thompson v. Paul*, 547 F.3d 1055,

1059 (9th Cir. 2008), we next consider whether BAC can nevertheless prevail on its motion to dismiss.

As explained above, in order to state a claim under sections 480-2 and 480-13, Compton must plausibly allege that (1) she is a "consumer," *see* Haw. Rev. Stat. §§ 480-2(d), 480-13(b); (2) BAC violated section 480-2(a), prohibiting "unfair or deceptive acts or practices in the conduct of any trade or commerce," *id.* § 480-2(a); and (3) she has suffered an injury resulting in damages, *see id.* § 480-13(b)(1); *Zanakis-Pico*, 98 Haw. at 316.

As a threshold matter, it is undisputed that Compton qualifies as a "consumer," and that BAC's lending and loan modification activities involve the "conduct of any trade and commerce." *See Keka*, 94 Haw. at 227 (internal quotation marks omitted).

We also conclude that Compton has sufficiently alleged that BAC engaged in an "unfair or deceptive act or practice" for the purpose of withstanding a motion to dismiss. As previously noted, Compton does not base her UDAP claim on allegations that BAC failed to determine whether she would be financially capable of repaying the loan. Rather, the gist of Compton's complaint is that BAC misled her into believing that BAC would modify her loan and would not commence foreclosure proceedings while her loan modification request remained under review. As a result of these misrepresentations, Compton engaged in prolonged negotiations, incurred transaction costs in providing and notarizing documents, and endured lengthy delays. The complaint's description of BAC's misleading behavior sufficiently alleges a "representation, omission, or practice" that is likely to deceive a reasonable consumer. *Courbat*,

111 Haw. at 262. Moreover, BAC's misrepresentations and misleading conduct were material, in that they involved information important to a consumer attempting to negotiate with a mortgagor to prevent foreclosure. *Id*.

We next turn to the question whether the complaint adequately alleged an injury resulting in damages. In the section relating to the UDAP claim, the complaint merely states that Compton suffered "considerable hardship" due to spending "almost two years attempting to modify her mortgage loan" and ending up in foreclosure. This section also incorporates by reference the preceding paragraphs in the complaint. The complaint's factual allegations detail the various transaction costs Compton incurred in attempting to meet BAC's never-ending and ever-changing requirements. These allegations of the damages proximately caused by the lender's deceptive acts, namely the costs suffered by Compton in connection with the failed loan negotiations, are sufficiently pleaded to survive a motion to dismiss.

In addition, the complaint states that had Compton been able to enter into a loan modification agreement, she would not have defaulted or faced foreclosure, and the foreclosure caused her to incur attorney fees, late payment payments, and lost business income. These allegations were made in connection with a breach of contract claim, however, and the complaint does not state that BAC's misleading loan modification practices resulted in the foreclosure or consequential damages at issue. Accordingly, the complaint does not allege a basis for Compton to recover equitable remedies such as relief from foreclosure through her UDAP claim.

Given Hawaii's low bar for showing damages, we conclude that for the purpose of a motion to dismiss Compton's allegations that BAC's deceptive conduct caused her to waste two years of effort and incur multiple transaction costs are sufficient to state an injury that caused damages. *See Jenkins*, 95 F.3d at 799 (holding that a complaint's mere conclusory statement that the plaintiff has "sustained special and general damages" due to defendant's violation of section 480-2 suffices to withstand a motion to dismiss).

Accordingly, Compton has "nudged" her UDAP claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. We therefore **REVERSE** the district court's dismissal of Compton's UDAP claim and **REMAND** for proceedings consistent with this opinion.