177 P.3d 341

**Albert FLORES and Donald R. Rapoza,
Plaintiffs–Appellees**

v.

**The RAWLINGS COMPANY, LLC,
Defendant–Appellant.**

**No. 28124.**

Supreme Court of Hawai'i.

Feb. 1, 2008.

Reconsideration Granted in Part and
Denied in Part March 6, 2008.

Thomas R. Grande, (Jeffrey P. Crabtree, and Norman K.K. Lau, on the brief; substituted 10/9/07), Honolulu; (Margery S. Bronster, Robert Hatch, and Jeannette H. Castagnetti of Bronster, Crabtree & Hoshibata, on the brief; withdrew 10/9/07), Honolulu, for Plaintiffs–Appellees Albert Flores and Donald Rapoza.

Lissa H. Andrews (Devon I. Peterson of Rush Moore LLP with her on the briefs), Honolulu, for Defendant–Appellant The Rawlings Company, LLC.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by DUFFY, J.

Defendant–Appellant The Rawlings Co., LLC [hereinafter, Rawlings], appeals from the August 1, 2006 interlocutory order of the circuit court of the first circuit,[1] denying Rawlings's motion for summary judgment in this action initiated by Plaintiffs–Appellees Albert Flores and Donald Rapoza [hereinafter, collectively, Plaintiffs] against Rawlings. The case was subsequently transferred to this court pursuant to Hawai'i Revised Statutes (HRS) § 602–58(b)(1) (Supp.2006).

Although the heart of Plaintiffs' claim is that Rawlings violated the registration requirement for collection agencies under HRS § 443B–3(a) (1993), this appeal also concerns two threshold issues regarding whether Plaintiffs may bring this claim: (1) whether Plaintiffs have established injury within the meaning of HRS § 480–13 (Supp.2004), and (2) whether Plaintiffs are "consumers" within the meaning of HRS § 480–13. The circuit court, in denying Rawlings's motion for summary judgment, found that these prerequisites for bringing suit had been met and that Rawlings was subject to the registration requirement of HRS § 443B–3(a).

On appeal, Rawlings argues that: (1) the circuit court erred in ruling that Plaintiffs' respective payments of what Rawlings terms "valid obligations" constituted "actual injury" sufficient to give them standing to bring suit; (2) the circuit court erred in ruling that Plaintiffs were "consumers" under HRS chapter 480, because the transaction involving Rawlings was a recovery of subrogation/reimbursement claims arising from tort rather than a consumer transaction concerning the delivery of medical services; and (3) the circuit court erred in ruling that Rawlings was recovering "debts" within the meaning of HRS chapter 443B, such that it was a "collection agency" subject to that chapter.

Based on the following, we vacate the circuit court's interlocutory order and remand to the circuit court to enter an order granting summary judgment in favor of Rawlings.

## I. BACKGROUND

### A. Factual Background

Rawlings is a Kentucky-based company that contracted with the Hawaii Medical Services Association (HMSA) to provide subrogation and "claims recovery services." As part of the agreement, Rawlings would retain

---

1. The Honorable Karen S.S. Ahn presided over this matter.

a portion of the amount recovered. In 2001, Rawlings recovered money from 191 Hawai'i residents. Since 2001, Rawlings has recovered money from Hawai'i residents as follows: 288 in 2002, 309 in 2003, and 347 in 2004. Rawlings has never registered as a collection agency with the Director of Commerce and Consumer Affairs.

Plaintiffs were both injured in separate incidents,[2] and subsequently sought medical treatment for their injuries—Flores in April 2001, and Rapoza in May 2002. Prior to receiving treatment, Flores and Rapoza were each required to sign a contract undertaking legal responsibility for payment and assigning any insurance benefits each might receive to the treating hospital.

Flores and Rapoza are both members of employer-based medical benefits plans administered by HMSA.[3] Pursuant to their respective medical benefits plans, certain of their medical bills were paid by HMSA.

Shortly after Plaintiffs received treatment, HMSA demanded that Plaintiffs sign agreements stating that any money HMSA might pay for their treatment was an "interest free loan" from HMSA to them.[4]

After their accidents, Plaintiffs pursued tort claims against the third parties allegedly responsible for their injuries. Subsequently, Rawlings sent "Notice of Lien" letters to Plaintiffs' attorneys giving notice that HMSA was asserting a claim for the benefits it had paid on behalf of Plaintiffs.[5] The letters essentially stated that HMSA claims a lien on the amounts it has paid out in medical benefits on behalf of the insured, which applies to any amounts recovered from notified third parties, and asks for notification of any such recovery.[6]

After Plaintiffs settled their claims against the third parties, they each submitted money to Rawlings to settle the HMSA claims on a compromise basis.[7] Plaintiffs assert that

2. Rapoza slipped and fell due to some liquid on the floor at Foodland in Pearl City, on April 11, 2002. Flores was assaulted on April 3, 2001.

3. Flores was covered as an employee of the Theo H. Davis & Company, Ltd.; Rapoza's coverage was as a dependent under his wife's plan, provided by the United States Office of Personnel Management ("OPM").

4. Rapoza and Flores signed identical forms, which included the following section entitled "Loan Agreement Between You and HMSA: Please Read the Following Carefully":

Your plan will not cover your medical expenses if someone else caused or may have caused your injury or illness because that person may be responsible for paying your expenses.
Since it may take a long time to determine whether any other person is responsible for your injury or illness, you may request HMSA to pay your plan benefits as an interest-free loan until that question is resolved and the other person makes payment. If you accept our loan, you agree to notify HMSA when a financial settlement is reached, and you agree that any reimbursement or recovery you receive from any person(s) responsible for your injury or illness, must *first* be used to repay your loan to HMSA.
If you do not recover any money from the person(s) who caused or may have caused your injury or illness, you do not have to repay HMSA. Proper documentation must be sent to HMSA for verification.

By signing below, I request HMSA to pay my medical expenses as a loan and agree to the above loan agreement terms.

5. Rawlings sent the letter to Flores's then-counsel on July 5, 2001, and to Rapoza's counsel on February 7, 2003.

6. The text of the letter written to Flores is as follows:

Our client has paid medical benefits on behalf of its members as the result of the accident referenced above. This letter shall serve as notice to you of the lien our client is claiming for these benefits.
This lien applies to any amount now due or which may hereafter become payable out of recovery or recoveries collected or to be collected, whether by judgment, settlement or compromise, from any party hereby notified. No settlement of the claim, which includes medical expenses paid by our client, should be made prior to notifying our office of the potential settlement and reaching an agreement for reimbursement of these benefits.
We are notifying all interested parties of our client's claim/lien and request that you provide all pertinent information regarding the adverse parties and their insurance carriers.
Please confirm your representation of our client's member and provide the requested information by completing and returning the enclosed form.

7. HMSA paid medical benefits on behalf of Flores in the amount of $8,149.68. Flores received $18,084.09 in settlement of his claim

both Flores and Rapoza did not admit that either "owed any money or that [Rawlings's] demand was based on a valid or meritorious claim." [8] In separate release agreements on Rawlings's letterhead, both in December 2004, HMSA released Flores and Rapoza "from any and all claims and liens for subrogation or reimbursement for medical expenses which the undersigned now has or which may hereafter accrue as a result of the accident...."

## B. *Procedural History*

On December 28, 2004, Plaintiffs commenced this action in the first circuit court, alleging claims under HRS chapters 436B,[9] 443B, and 480. Rawlings admitted that it had not registered as a collection agency under HRS chapter 443B, which it contends does not apply to its business activities. On June 1, 2006, Rawlings moved for summary judgment, arguing that: (1) Plaintiffs could not show any injury from Rawlings's alleged violation of chapter 443B; (2) Plaintiffs were not "consumers" under chapter 480; and (3) Rawlings was not required to register under HRS § 443B-3 because it did not collect "debts" from Plaintiffs. Plaintiffs countered that: (1) they showed injury because they paid money to Rawlings in direct response to Rawlings's illegal acts of demanding payment; (2) they were "consumers" because the money Rawlings claimed that they owed was money owed for the purchase of personal healthcare services; and (3) the money paid was a "debt" because it arose from Plaintiffs'

own pre-treatment agreements with their personal health care providers.

Rawlings's motion was argued on July 18, 2006. The circuit court denied the motion, reasoning, in relevant part:

> Chapter 443B ... is broad and it aims to eliminate abusive debt collection practices by collectors....
>
> Chapter 443B and the term "consumer" in [c]hapter 480, read in the context of their purpose and reading the provisions together, cannot be [as] limited as [Rawlings] seeks to argue.
>
> Section 443B-3 clearly says that a collection agency cannot collect or try to collect a debt without first registering.
>
> Section 443B-20 says that any violation of [c]hapter 443B by such an agency is actionable under [s]ection 480-2.
>
> Now, the relevant alleged violation here is the collection of an alleged debt without first having registered in Hawai'i. The Court agrees that when, pursuant to an agreement, HMSA paid medical bills for [P]laintiffs, then [Rawlings] by contract collected out of [P]laintiffs' settlements for those medical bills, [P]laintiffs were actually injured.
>
> ....
>
> The Court fundamentally agrees with [Plaintiffs] that the term "debt" and "consumer" can and should be read to apply to [P]laintiffs' payment of money arising out of the transaction, under our facts, of consensual arrangement for payment for delivery of medical services.

against the third-party tortfeasor on March 22, 2004. Flores, through his attorney, paid $4,074.93 to Rawlings.

HMSA paid medical benefits on behalf of Rapoza in the amount of $4,399.97. Rapoza received $23,000.00 in settlement of his claim against the third-party tortfeasor on March 12, 2003. Rapoza, through his attorney, paid $2,200.00 to Rawlings.

8. The record is devoid of any evidence that Flores or Rapoza made any admission of owing money or that Rawlings's demand was valid. As support for this fact, Plaintiffs point to the brief settlement letter and an email communication from their counsel to Rawlings "urg[ing] [Rawlings] to reconsider" the Plaintiff's "reasonable offer to reduce HMSA's lien by 50% to avoid any

litigation...." The settlement letters did not include any admissions. The letter settling Rapoza's claim stated simply that "[t]his letter will confirm our agreement to settle the above referenced matter," which was referred to above by inclusion of the patient name and date of loss. The letter confirming settlement of Flores' claim stated: "I have discussed your offer with our client and they will agree to reduce their lien and accept $3,889.91," an amount that was reduced in further negotiation. Likewise, further communications between Plaintiffs and Rawlings fail to evidence any admission by Plaintiffs that they owed money or that Rawlings's demand was based on a valid claim.

9. It is not clear what claim was brought under HRS chapter 436B. In any event, any such claim is not part of this appeal.

On August 1, 2006, an order denying Rawlings's motion for summary judgment was entered. On August 30, 2006, the circuit court signed an order permitting Rawlings to take an interlocutory appeal under HRS § 641–1(b) (1993). Rawlings filed its opening brief on January 10, 2007, raising the same three points of error raised in its motion for summary judgment. The case was subsequently transferred to this court pursuant to § 602–58(b)(1), by order of the court.

Oral argument was held on October 17, 2007. In addition to the arguments made in their appellate briefs, at oral argument Rawlings made several additional arguments about the nature of the amounts owed by Plaintiffs to HMSA, discussed herein. Rawlings also brought to the court's attention several legal authorities not cited in their appellate briefings, including: a recent decision of the Washington Court of Appeals, *Stephens v. Omni Insurance Co.*, 138 Wash. App. 151, 159 P.3d 10 (2007); a 1987 informal staff opinion of the Federal Trade Commission; and an unpublished disposition of the United States District Court for the Middle District of Louisiana, *Dantin v. The Rawlings Co.*, Case 3:03–cv–00116–JVP–CN (M.D.La. Apr. 13, 2005).

## II. STANDARDS OF REVIEW

### A. Motion for Summary Judgment

■ The standard for granting a motion for summary judgment is settled:

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Id.* (citations and internal quotation marks omitted).

*Coon v. City and County of Honolulu*, 98 Hawai'i 233, 244–45, 47 P.3d 348, 359–60 (2002) (second alteration in original).

*Kau v. City and County of Honolulu*, 104 Hawai'i 468, 474, 92 P.3d 477, 483 (2004).

### B. Statutory Interpretation

■ Statutory interpretation is "a question of law reviewable *de novo.*" *State v. Levi*, 102 Hawai'i 282, 285, 75 P.3d 1173, 1176 (2003) (quoting *State v. Arceo*, 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996)). This court's statutory construction is guided by established rules:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

*Peterson v. Hawaii Elec. Light Co., Inc.*, 85 Hawai'i 322, 327–28, 944 P.2d 1265, 1270–71 (1997), *superseded on other grounds by* HRS § 269–15.5 (Supp.1999) (block quotation format, brackets, citations, and quotation marks omitted).

■ In the event of ambiguity in a statute, "the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." *Id.* (quoting HRS § 1–15(1) (1993)). Moreover, the courts may resort to extrinsic aids in determining legislative intent, such as legislative history, or the reason and spirit of the law. *See* HRS § 1–15(2) (1993).

## III. DISCUSSION

### A. Rawlings is a "Collection Agency" that Collected Money Alleged to be Due and Owing Within the Meaning of HRS § 443B–1.

Rawlings argues that the circuit erred in holding that Rawlings is a debt collector subject to HRS chapter 443B, because it does not recover "debts" as defined by HRS § 443B–1.

HRS § 443B–3 provides that

No collection agency shall collect or attempt to collect any money or any other forms of indebtedness alleged to be due and owing from any person who resides or does business in this State without first registering under this chapter.

HRS § 443B–3(a).[10] It is not disputed that Rawlings did not register within the meaning of HRS chapter 443B. Therefore, the relevant issues in determining whether Rawlings was required to register under HRS § 443B–3(a) are (1) whether Rawlings is a "collection agency" and (2) whether Rawlings "collect[ed] or attempt[ed] to collect any money or any other forms of indebtedness alleged to be due and owing" from a Hawai'i resident.

#### 1. Rawlings is a "Collection Agency."

■ Rawlings's principal argument is that it is not subject to the registration requirement because it does not collect "debts." To the extent this argument relies on federal law, however, it is misconceived. Because regulation of a "collection agency" under chapter 443B only requires that a "person"— like Rawlings—"offer[ ] to undertake or hold[ ] oneself out as being able to undertake or does undertake to collect for another person, *claims or money due on accounts* or other forms of indebtedness," HRS § 443B–1

(1993) (emphasis added), for a fee, it is not required that the collection agency at issue collect "debts." Rawlings has not argued that it does not collect "claims or money due on accounts," but only that it does not collect "debts." [11] Furthermore Rawlings did not rebut this argument in its reply brief, although it was clearly raised by Plaintiffs in their answering brief.

Rawlings's misreading of our statute appears to be based on an erroneous supposition that the federal Fair Debt Collection Practices Act (FDCPA) has the same coverage as our law, which is evidenced by Rawlings's extensive reliance in its briefings on federal caselaw interpreting the FDCPA. Hawaii's law defines "collection agency" more broadly than the federal law, which regulates entities it defines as "debt collectors." Whereas a "collection agency" in our law includes persons who collect claims or money due on accounts, the FDCPA definition of "debt collector" is limited to collection of "debts." *See* 15 U.S.C. § 1692a(6) (2006) ("The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any *debts*, or who regularly collects or attempts to collect, directly or indirectly, *debts* owed or due or asserted to be owed or due another." (Emphases added.)).

■ The statutory structure of the Hawai'i Revised Statutes reinforces the view that HRS chapter 443B is broader in its coverage that the federal statute. Hawai'i law contains a separate chapter entitled "collection practices," HRS chapter 480D, that is "intended to cover collection activities by debt collectors in collecting consumer debts." HRS § 480D–1 (1993). Unlike chapter 443B, chapter 480D specifically covers "debt collectors," which are defined as

10. HRS § 443B–3(b) explains that "[r]egistration shall include:"
(1) Submission of a complete application for registration;
(2) Submission of a certificate of good standing or a certificate of authority from the business registration division;
(3) Payment of appropriate fees;
(4) Filing and maintenance of a bond in the amount prescribed in section 443B–5;
(5) Maintenance of a regular active business office in the State; and

(6) Designation of a principal collector, as prescribed in section 443B–6.

11. Neither is HRS § 443B–3, the registration requirement, limited to debt collection, but expressly prohibits any unregistered collection agency from "collect[ing] or attempt[ing] to collect *any money* or any other form of indebtedness alleged to be due and owing...." HRS § 443B–3 (emphasis added). *See infra.*

"any person, *who is not a collection agency,* and who in the regular course of business collects or attempts to collect consumer debts owed or due or asserted to be owed or due to the collector." HRS § 480D–2 (1993) (emphasis added). Both chapters were passed by the legislature in the same act. 1987 Haw. Sess. L. Act 191, at 423–30. The differences between the two chapters provide a clear indication that the legislature intended the regulation of "collection agencies" in HRS chapter 443B to be distinct from its regulation of "debt collectors." Therefore, federal law interpreting the latter term cannot be interpreted to cover "collection agencies."[12]

The critical distinction between our law and the federal law is that our statute is targeted towards those who collect "claims or money due on accounts or other forms of indebtedness" while the federal law is limited to those who collect "debts." The terms "claims" and "money due on accounts" are not defined in HRS chapter 443B and, as such, should carry their ordinary meanings. It is apparent that Rawlings was collecting "claims" that HMSA had against Plaintiffs.[13] Even Rawlings characterized its collection activity in this manner, stating in its opening brief that it had sent the Plaintiffs' attorney "notice that HMSA was asserting a *claim* for the benefits HMSA had paid on behalf of each [Plaintiff] for the injuries sustained as a result of the third-parties' actions." (Emphasis added.)

## 2. Rawlings Collected "Money or Any Other Forms of Indebtedness Alleged to be Due and Owing."

■ A collection agency that collects or attempts to collect "any money or any other forms of indebtedness alleged to be due and owing" from a Hawai'i resident must register. HRS § 443B–3. The moneys collected from Plaintiffs by Rawlings would appear to fit under this broad category.

At oral argument Rawlings asserted, for the first time, that the amounts it collected were not "due and owing," and thus not subject to the registration requirement of HRS § 443B–3. Separate and apart from the fact that Rawlings failed to assert this argument in the circuit court, it fails on its merits.

Rawlings did not present a clear factual argument for its assertion that the money it had collected from Plaintiffs was not "alleged to be due and owing." At different points Rawlings recast its argument into separate assertions (1) that the amounts collected were "unliquidated" and (2) that they were not in "default" at the time Rawlings sought to collect upon them. However, contrary to Rawlings's argument, neither of these scenarios negates the conclusion that because of the loan obligation, these amounts were "alleged to be due and owing" when Rawlings collected upon them.

Although it is true that the amounts collected were "unliquidated," nothing in HRS chapter 443B limits its application to the collection of "liquidated" claims. The term "unliquidated" means "not previously specified or determined." *Black's Law Dictionary, supra* at 1574. *Black's* defines the more specific term "unliquidated debt" as "a debt that has not been reduced to a specific amount, and about which there may be a

12. Rawlings argues that federal law should set the precedent in lieu of Hawai'i case law on point. However, federal law does not set precedent merely based on an absence of Hawai'i case law. Foreign law can be persuasive in Hawai'i, but only when there is a basis for its application. *See Del Monte Fresh Produce (Hawaii), Inc. v. ILWU,* 112 Hawai'i 489, 507 n. 33, 146 P.3d 1066, 1084 n. 33 (2006) ("Although this court has used federal precedent on occasion in the past to guide its interpretation of state . . . laws, such consultation is solely to aid interpretation and only makes sense where the statutory language is the same or similar in all relevant respects." (Citation omitted.)).

13. The term "claim" is defined in the following ways relevant to this issue: (1) "The assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional"; (2) "A demand for money, property, or a legal remedy to which one asserts a right . . . ."; and (3) "An interest or remedy recognized at law. . . ." *Black's Law Dictionary* 264 (8th ed.2004) (some definitions are not included here). This extraordinarily broad definition would appear to encompass the amounts that Rawlings sought to recover from Plaintiffs on behalf of HMSA.

dispute," *id.* at 433, and the term "unliquidated claim" as "a claim in which the amount owed has not been determined." *Id.* at 254. Even though the amounts collected by Rawlings were not "liquidated," Rawlings nevertheless attempted to collect "money . . . alleged to be due and owing." As its "Notice of Lien" letter indicated, the lien claim "applie[d] to any amount now due or which may hereafter become payable out of recovery or recoveries collected or to be collected, whether by judgment, settlement or compromise, from any party hereby notified." As such, Rawlings clearly attempted to collect money that it alleged was "due and owing."[14]

Rawlings's assertion that the amounts collected were not in "default" at the time collection was sought is also not relevant to our HRS § 443B-3 analysis. Rawlings's argument appears to be based on the FDCPA, and not Hawai'i law. In an unpublished decision of the United States District Court for the Middle District of Louisiana proffered to the court by Rawlings at oral argument, the District Court dismissed an FDCPA claim against Rawlings because the debt asserted was not in default at the time it was obtained. *Dantin v. The Rawlings Co.*, Case 3:03-cv-00116-JVP-CN (M.D.La. Apr. 13, 2005). The court relied upon a statutory

exception to the definition of "debt collector" under the FDCPA, according to which a party is *not* a debt collector if its collection activities "concern[ ] a debt which was not in default at the time it was obtained by such person. . . ." 15 U.S.C. § 1692a(6)(F)(iii). The District Court in *Dantin* concluded that this exception applied, because Rawlings had obtained information from the insurance company regarding payments made by the company on behalf of the plaintiff one year prior to the time at which the plaintiff received settlement funds from the third-party tortfeasor. *Id.* at 9. Therefore, there was no "default," *i.e.*, the amount owed to the insurance company based on the subrogation provision in its policy, at the time the debt was obtained by Rawlings for collection; "default" occurred only later, when the plaintiff reached a third-party settlement. Because HRS chapter 443B lacks the FDCPA exemption for debts not in default at the time obtained, the *Dantin* case has no relevance to Rawlings's status as a collection agency subject to the registration requirement of HRS § 443B-3.

Therefore, based on the undisputed facts, Rawlings is a "collection agency" within the meaning of HRS chapter 443B, subject to the registration requirement of HRS § 443B-3.[15]

14. The distinction between "due and owing" and the "unliquidated" status of a debt is clear from the following discussion:

In a broad sense, 'debt' simply means something *due and owing*. However, traditionally in the law, it has been given a narrower and more restricted meaning. A debt arises out of a contractual relationship but not all contracts result in a debt. At common law, a 'debt' signified a certain or definite sum of money. However, this has not meant a particular fixed sum of money, but such a sum as can be ascertained from fixed data by computation, or which is capable of being reduced readily to a certainty.

. . . "Clearly, within the purport of the rule discussed at the beginning of this section, a sum which is sought to be recovered by way of attachment or garnishment which is entirely hypothetical or conjectural, and unliquidated or uncertain as to the amount owed, is not an action for a 'debt' within the statutes."

This view that the concept of 'debt' is opposed to an unliquidated sum or claim was clearly expressed in *Henriques v. Vinhaca, supra,* 20 Haw. 702 [(1911)]. While the claim in *Henriques* was not only unliquidated in the

sense of being uncertain but also contingent, still the fact remains that while not contingent the instant claim is still clearly unliquidated in that its ascertainment requires the exercise of judgment, discretion and opinion and not mere calculation or computation. As indicated generally, as well as in *Henriques*, the time for ascertainment of the certainty of the claim, or the capacity of the claim to be reduced to certainty, is the time when process is issued. *Welsh v. Woods,* 47 Haw. 252, 260–61, 386 P.2d 886, 889–90 (1963) (emphasis added).

15. The remaining authorities that Rawlings brought to the court's attention at oral argument are similarly unhelpful to its case.

In the *Stephens* case, a Washington appellate court determined that a credit collection agency had violated the Washington Consumer Practices Act when it sent collection notices stating an "amount due" to several parties on behalf of insurance companies who were asserting subrogation rights against those parties. *Stephens v. Omni Insurance Co.,* 138 Wash.App. 151, 159 P.3d 10 (2007), *reconsideration denied, Panag v. Farmers Insurance Co.,* No. 56625–3–I, 2007 Wash.App. LEXIS 1332 (Wash.Ct.App. May 25,

**B.** *Plaintiffs Fail to Meet the Threshold Requirements for Bringing Suit Against Rawlings under HRS § 480–13.*

In order for Rawlings's failure to register to be actionable by private litigants, the threshold requirements of HRS § 480–13 must be satisfied.

HRS § 480–13 governs lawsuits whose subject is "anything forbidden or declared unlawful by this chapter," HRS § 480–13(a), and "unfair or deceptive act[s] or practice[s] forbidden or declared unlawful by section 480–2." HRS § 480–13(b).[16] The latter provision, which concerns "consumer" lawsuits and applies to this case, provides that

> Any *consumer* who is *injured* by any unfair or deceptive act or practice forbidden or declared unlawful by section 480–2:
>
> (1) May sue for damages . . . .; and
>
> (2) May bring proceedings to enjoin the unlawful practices . . . .

HRS § 480–13(b) (emphases added). Any violation of chapter HRS 443B, which regulates "collection agencies," constitutes an "unfair or deceptive act[ ] or practice[ ] in the conduct of any trade or commerce for the purpose of section 480–2." HRS § 443B–20 (1993).

Therefore, the relevant issues regarding Plaintiffs' right to bring this lawsuit are (1) whether Plaintiffs were "consumers" within the meaning of HRS § 480–13, and (2) whether Plaintiffs were "injured" within the meaning of HRS § 480–13. Because, based on the undisputed facts, Plaintiffs have failed to show that they were injured, they may not bring suit under HRS § 480–13.

**1. Plaintiffs are "Consumers."**

 In order to bring a private cause of action based on "unfair or deceptive act[s] or practice[s] forbidden or declared unlawful by section 480–2," such as violations of HRS § 443B–3, one must be a "consumer" within the meaning of HRS chapter 480. Rawlings claims that the circuit court erred in holding that the Plaintiffs were "consumers," because they neither purchased nor attempted to purchase, nor were they solicited to purchase anything from Rawlings or HMSA, as required by the definition of "consumer." Rather than consumers, Rawlings contends that Plaintiffs were third-party beneficiaries of employer health care contracts with HMSA, and as such may not bring suit as consumers under our caselaw. Plaintiffs maintain, on the other hand, that one may qualify as a consumer in the context of a violation of HRS chapter 443B by showing that the debt collected upon arose in a consumer context. Because consumers do not typically purchase services from collection agencies, Plaintiffs contend that requiring such a purchase would lead to an absurd result.

**a.** *Rawlings's argument*

"Consumer" is defined by statute to mean:

2007), *reconsideration denied, Stephens v. Omni Insurance Co.*, No. 57068-4-I, 2007 Wash.App. LEXIS 1333 (Wash.Ct.App. May 25, 2007). In *Stephens*, the Washington court concluded that even if subrogation claims are not regulated by the FDCPA, collection activities in this area are not exempt from the Washington law, which applies broadly to "unfair or deceptive act[s] or practice[s]." *Id.* at 12. Rawlings cited *Stephens* for the proposition that subrogation claims are not "debts," which the court determined in the context of the FDCPA. *Id.* at 21–22. However, not only is this analysis inapplicable to Hawai'i law, but the *Stephens* court also repeatedly referred to the claims at issue as "subrogation *claims*," which are encompassed within the broader definition of "collection agency" under HRS § 443B–1.

The FTC letter cited by Rawlings is also inapplicable, as it merely interprets the term "debt" under the FDCPA. In any event, the letter is readily distinguishable, as it concerns the collection attempts by an insurer against a third-party tortfeasor who did not receive any personal services from the insurer, rather than collection attempts against an insured who did receive such services.

**16.** HRS § 480–2 includes a declaration stating that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." HRS § 480–2(a) (Supp.2004). HRS § 480–2 also provides that:

(d) No person other than a consumer, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices declared unlawful by this section.

(e) Any person may bring an action based on unfair methods of competition declared unlawful by this section.

HRS § 480–2.

a natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment.

HRS § 480-1 (1993).

Rawlings argues that neither of the Plaintiffs meet this definition because neither Flores nor Rapoza purchased, attempted to purchase, or was solicited to purchase goods or services from Rawlings. Rather, both are participants in employer health benefit plans: Flores directly as an employee of Theo Davies, and Rapoza as a dependent on his wife's plan through her employer, the federal government. Rawlings points out that the contracts between the employers and HMSA are exclusively between the named parties.

Rawlings further argues that rather than consumers, Plaintiffs are third-party beneficiaries of their employer's contracts with HMSA, and as such cannot bring suit under HRS § 480-13. In support, Rawlings points to this court's decision in *Hough v. Pacific Insurance Co.*, 83 Hawai'i 457, 927 P.2d 858 (1996), and the Intermediate Court of Appeal's (ICA) decision in *Hunt v. First Insurance Co. of Hawaii, Ltd.*, 82 Hawai'i 363, 922 P.2d 976 (App.1996).

In *Hough,* this court considered whether an injured employee, who had brought multiple tort claims against the insurer based on its conduct in handling his attempt to obtain workers' compensation benefits, could also bring a separate claim for damages against the insurer based on HRS chapter 480. 83 Hawai'i at 462, 927 P.2d at 863. This court held that the plaintiff could not bring an unfair or deceptive practice claim, because

> Hough is not a consumer within the meaning of this statute. He did not purchase workers' compensation insurance from Pacific. He is a third party beneficiary of the contracts of insurance purchased by his employers.

*Id.* at 470, 927 P.2d at 871. The court further held that Hough could also not bring a derivative third-party claim under HRS chapter 480, because the insurer, as a corporation, was not a consumer. *Id.* at 471, 927 P.2d at 872. *See also Hunt,* 82 Hawai'i 363, 922 P.2d 976 (holding that customer of grocery store, who was injured by slip and fall at store, could not bring HRS chapter 480 claim against store's insurance company which had refused payment of medical claims, because customer, not having made any purchase from the insurance company, was not a "consumer" who could bring suit).[17]

b. *Plaintiffs' argument*

Plaintiffs do not claim to have made or attempted any purchase from Rawlings, nor do they claim that Rawlings solicited any. Rather, Plaintiffs argue that in the context of debt collection, the proper focus should be on whether the underlying obligation or debt is a consumer debt, as opposed to a commercial or business one. In other words, if the alleged debt arises in a consumer context, then the debt holder is a "consumer" who may bring suit under HRS § 480-13(b). Under Plaintiffs' theory, they would qualify as "consumers" because Rawlings was collecting on the "loan agreement" from HMSA purporting to advance Plaintiffs the expenses for their medical treatment, which is akin to a "service" for "personal" purposes. *See* HRS § 480-1. Plaintiffs contend that the opposite result would lead to an absurd result and controvert the clear intent of HRS chapter 443B to "protect debtors from abusive collection agencies." Sen. Comm. Rep. No. 541, in 1987 House Journal, at 1355.

In support of their argument, Plaintiffs cite the definition of "debt" in HRS § 443B-1, which they contend shows that "in the context of debt collection, the focus is on the nature of the alleged debt." HRS § 443B-1 defines "debt" to mean

> any obligation or alleged obligation of a *consumer* to pay money or other forms of

17. Plaintiffs claim that *Hough* and *Hunt* are distinguishable because those cases do not concern debt collection and Plaintiffs are not trying to enforce any contracts or seek any benefits under any insurance policy. Plaintiffs also note that while workers's compensation and commercial

general liability insurance are for the purpose of protecting businesses against claims arising from the operation of the business, health care coverage is mandated by the state to "provide continuous medical insurance coverage for employees."

payment arising out of a transaction in which the money, property, insurance, or services, which are *the subject of the transaction,* are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

HRS § 443B–1 (emphases added). Based on this definition, Plaintiffs assert that the loan agreement from HMSA to pay for their personal medical treatments amounts to a "transaction" within the meaning of "debt."

In the context of collection agency abuses actionable under HRS § 480–13, it is unlikely that the legislature intended to limit the ability to sue to those who had made, attempted to make, or were solicited to make a purchase by a collection agency. This would be an inconsistent, if not absurd, result that the legislature would not have intended. *See Beneficial Hawai'i, Inc. v. Kida,* 96 Hawai'i 289, 309, 30 P.3d 895, 914–15 (2001) ("[T]he legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction, and illogicality." (Citations and internal quotation marks omitted.)).

HRS § 443B–20 states that any violation of chapter 443B "shall constitute ... unfair or deceptive acts or practices in the conduct of any trade or commerce for the purpose of section 480–2." HRS § 443B–20. HRS § 480–2 in turn specifies that a consumer "may bring an action based upon unfair or deceptive acts or practices," HRS § 480–2(d), and the prerequisites for bringing suit are laid out in HRS § 480–13. *See* HRS § 480–13(b) ("Any *consumer* who is *injured* by any unfair or deceptive act or practice forbidden or declared unlawful by section 480–2 ... (1) May sue for damages ....; and (2) May bring proceedings to enjoin the unlawful practices....").

By deeming violations of HRS chapter 443B an unfair or deceptive act or practice for the purposes of HRS § 480–2, it is evident that the legislature wished to have

chapter 443B be enforceable in the same manner as other unfair trade practices under chapter 480. If enforcement were limited to individuals who had purchased, attempted to purchase, or were solicited for purchase of a service or good from a collection agency, enforcement of HRS chapter 443B would be left entirely in the hands of the state. In view of the expressed purpose of HRS chapter 480 to "encourage those who have been victimized by persons engaging in unfair or deceptive acts or practices to prosecute their claim," Hse. Stand. Comm. Rep. No. 541, in 1987 House Journal, at 1355, and the intent of HRS chapter 443B to "protect creditors from unscrupulous or dishonest collection agencies, and to protect debtors from abusive collection agencies," this result would not be in keeping with the statutory structure and would appear to be the type of "inconsistent," or "absurd," result that this court must presume the legislature would not have intended.[18]

Rather, in the context of consumer debt, the determination of whether the individual seeking suit is a "consumer" should rest on whether the underlying transaction which gave rise to the obligation was for a good or service that is "primarily for personal, family, or household purposes," HRS § 480–1. This reading is supported by the definition of "debt" in HRS § 443B–1, as well as the fact that the statutory structure of HRS chapter 480 does not require that one be a "consumer" of the *defendant's* goods or services, but merely a "consumer." *Cf. Flenniken v. Longview Bank and Trust Co.,* 661 S.W.2d 705, 707 (Tex.1983) ("Privity between the plaintiff and defendant is not a consideration in deciding the plaintiff's status as a consumer under the [Texas Deceptive Trade Practices Act]. A plaintiff establishes his standing as a consumer in terms of his relationship to a transaction, not by a contractual relationship with the defendant. The only requirement is that the goods or services sought or acquired by the consumer form the

---

**18.** Plaintiffs also suggest that were a consumer required to have made a purchase in order to bring suit against a collection agency, common abuses, such as demanded payment on a debt the victim never incurred because of identity theft, or demanding that a parent pay an alleged credit card debt of a child away from home, would not be enforceable by individual action under HRS § 480–13.

basis of his complaint." (Citations omitted.)).[19]

### c. *the underlying purchase*

In this case, Plaintiffs assert that they are "consumers" because after receiving medical services HMSA demanded payment in the form of an interest-free loan should they recover from a third-party. The services received had a "personal" purpose within the meaning of HRS § 480–1. *Cf. Adams v. Law Offices of Stuckert & Yates*, 926 F.Supp. 521, 526 (E.D.Pa.1996) (characterizing plaintiff's receipt of medical treatment at a plastic surgery center as "personal medical services," and finding that the plaintiffs' obligation to pay for such services was a "debt" under the FDCPA, which requires that the underlying transaction be "primarily for personal, family, or household purposes"). Therefore, based on the obligations arising from the "loan agreements," which HMSA required Plaintiffs to sign when they received their medical treatment, Plaintiffs appear to be "consumers."

However, at oral argument, Rawlings asserted that the "loan agreement" could not be the basis of one's "consumer" status, arguing that the "loan agreement" was an inartfully-titled document that did not create any new rights. Rather, Rawlings contended that HMSA had pre-existing subrogation rights, arising as a matter of law, to some portion of the amounts that Plaintiffs recovered from third-party tortfeasors, such that the loan agreement was nothing more than a written formalization giving Plaintiffs notice of these rights.[20] Although the precise status of the "loan agreement" was neither put at issue below nor discussed extensively in the appellate briefings, if correct, Rawlings's assertion would mean that there was no underlying transaction and that Plaintiffs were therefore not "consumers" of medical services.

Rawlings's theory is not convincing. The "loan agreement" provided by HMSA and signed by Plaintiffs is also known as a "loan receipt." "A loan receipt is an agreement which states that the insurance proceeds paid by the insurer to the insured constitute an

**19.** Although operating with different statutory frameworks, other states have concluded that debt collection activities are subject to consumer laws. *See In re Western Acceptance Corp.*, 117 Idaho 399, 788 P.2d 214, 216 (1990)(interpreting Idaho consumer law, the court "conclude[d] that the collection of a debt arising out of a sale of goods or services is subject to the provisions of the Act, even when the collection of the debt is by a third party who has purchased the debt from the seller ... [because i]t is the sale that brings the debt into existence that is the crucial event"); *Caputo v. Prof'l Recovery Servs., Inc.*, 261 F.Supp.2d 1249, 1260 (D.Kan.2003) ("The Kansas Supreme Court has held that 'an independent debt collection agency ... is subject to the provisions of the KCPA' if three conditions are satisfied: (1) the debt arose from a consumer transaction; (2) the underlying consumer transaction involved a 'supplier' and a 'consumer' as defined in the KCPA; and (3) '[t]he conduct complained of, either deceptive or unconscionable, occurred during the collection of, or an attempt to collect, a debt which arose from the consumer transaction and was owed by the consumer to the original supplier.' "); *Liggins v. May Co.*, 44 Ohio Misc. 81, 83, 337 N.E.2d 816 (Ohio Com.Pl.1975) ("It is this court's opinion that the intent of R.C. Chapter 1345, particularly relating to the various sections referred to, were to prohibit certain types of consumer practices to apply from the initial contact between the supplier and the consumer until the relationship terminates. In other

words, that relationship continues from the initial inception between consumer and supplier until, as in this case, the debt is fully paid.").

**20.** This court's basic principles regarding subrogation were recently discussed, in *Hawaii Ventures, LLC v. Otaka, Inc.*:

This court has defined subrogation as "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." *Peters v. Weatherwax*, 69 Haw. 21, 27, 731 P.2d 157, 161 (1987) (internal quotation marks omitted) (quoting *Kapena v. Kaleleonalani*, 6 Haw. 579, 583 (1885)). "When subrogation occurs, the substitute is put in all respects in the place of the party to whose rights he is subrogated. In effect, he 'steps into the shoes' of the party." *Peters*, 69 Haw. at 27, 731 P.2d at 161 (citations, internal quotation marks, and brackets omitted); *see also Beneficial Hawai'i, Inc. v. Kida*, 96 Hawai'i 289, 313–14, 30 P.3d 895, 919–20 (2001). Subrogation "is broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and which, in equity and good conscience, should have been discharged by the latter." *Peters*, 69 Haw. at 27, 731 P.2d at 161 (internal quotation marks, citation and brackets omitted).

114 Hawai'i 438, 483, 164 P.3d 696, 741 (2007).

interest-free loan which must be repaid to the extent that money is recovered in an action brought by the insurer in the name of the insured." 4 Rowland H. Long, *The Law of Liability Insurance* § 23.03[2][b][ii] (2007).

In other contexts, courts have considered whether such loan receipts are "true loans." [21] The weight of authority holds that loan receipts are valid, although as in any agreement, the intention of the parties should be considered. *See* Annotation, *Validity and effect of loan receipt or agreement between insured and insurer for a loan repayable to extent of insured's recovery from another,* 13 A.L.R.3d 42 (1967).[22]

Without specific arguments to the contrary, the plainest conclusion is that the "loan agreement" in this case constituted a true loan that could have been enforced by HMSA. As such, the loan agreement has created obligations, and could be considered a form of payment for the health care Plaintiffs received. Accordingly, Plaintiffs were "consumers" who, by virtue of the agreement, engaged in a consumer transaction.

### 2. Plaintiffs Were not "Injured."

 Rawlings argues that the circuit court erred in concluding that Plaintiffs were injured within the meaning of HRS § 480–13(b), primarily contending that because Plaintiffs paid amounts that were less than their original obligations to repay HMSA, they arguably received some benefit and could not therefore have suffered any injury. In support of this argument, Rawlings asserts that: (1) there was no injury that was "fairly traceable" to Rawlings's alleged violations of HRS § 443B–3; (2) this court's decisions, as well as cases in the federal district

court following them, require that, for an injury to exist, one must incur "private damages"; (3) this court's decisions demonstrate that payment of a valid obligation does not constitute injury; and (4) this conclusion is "consistent with the regulatory system the Hawaii State Legislature authorized in order to combat abusive collection practices."

In response, Plaintiffs argue that the trial court correctly held they were injured because the fact of payment of money to Rawlings in response to Rawlings's demand constituted an injury. In support of this contention, Plaintiffs argue that: (1) the plain text of HRS chapter 443B does not recognize any distinction between valid and invalid obligations that would mean injury could only follow from payment of an invalid obligation; (2) the purpose of the law to allow individual enforcement would be defeated if an individual could only sue on the basis of invalid obligations; (3) Rawlings's demand of payment without registering was illegal, so that Plaintiffs were injured when they paid money in response, a conclusion Plaintiffs contend is in line with our caselaw as well as that of other jurisdictions; and (4) Rawlings's policy argument in support of limited enforcement of HRS chapter 443B by the Attorney General is not in keeping with the purposes of the law and would result in needlessly burdening the state.

As explained below, Plaintiffs' payment of the HMSA lien to Rawlings does not constitute an injury for which they may bring suit under HRS § 480–13(b).

#### a. *injury in the context of HRS chapter 443B*

As our caselaw commands, in interpreting the standing requirements of HRS § 480–

---

**21.** Loan receipts are used primarily to avoid what is known as the "real party in interest" doctrine, under which insurers who have paid to the insured the entire amount of loss must sue third party tortfeasors in their own name rather than that of the insured, which is thought to prejudice *insurance companies in jury trials*. *See* 4 Long, *supra,* § 23.03[2][b]; Hawai'i Rules of Civil Procedure Rule 17(a) ("Every action shall be prosecuted in the name of the real party in interest."). A loan receipt obviates this result by keeping the insured as a real party in interest but requiring repayment of any funds recovered.

4 Long, *supra,* § 23.03[2][b][ii]. Courts have thus considered whether loan receipts are valid in order to determine whether an insurer paying pursuant to such a loan receipt may sue in the insured's name. *Id.*

**22.** "There is a divergence of opinion, however, as to whether a loan receipt transaction constitutes a valid loan where the insurer's liability is absolute. In most of the cases where such a situation existed, the transaction was deemed to be a valid loan. . . ." 13 A.L.R.3d at 49.

13(b), we must start with the language of the statute, which allows "[a]ny consumer who is *injured* by any unfair or deceptive act or practice forbidden or declared unlawful by section 480–2" to sue for damages or injunctive relief.

The statute does not define the term "injury." *Accord Zanakis–Pico v. Cutter Dodge, Inc.*, 98 Hawai'i 309, 316, 47 P.3d 1222, 1229 (2002) ("HRS chapter 480 defines neither 'injury' nor 'damages,' . . . ."). Rawlings and Plaintiffs put forth two different interpretations of what it means for a consumer to be injured in the context of claims based on a violation of the registration requirement of HRS § 443B–3. Plaintiffs point to the statute, which states that "[n]o collection agency shall collect or attempt to collect any money . . . from any person who resides . . . in this State without first registering," HRS § 443B–3, in support of their argument that the act of paying money to, or being collected upon by, an unregistered collection agency caused injury to Plaintiffs. Rawlings posits a narrower view, that one is not injured when one pays a valid obligation to a collection agency that has committed the unfair trade practice of collecting money without registering.

■ As none of our cases have dealt with injury in this precise context, this court must draw on the concept of injury in analogous cases. As a general matter, "injury" means a "judicially-cognizable injury, that is, a harm to some legally-protected interest." *Sierra Club v. Dep't of Transp.*, 115 Hawai'i 299, 321, 167 P.3d 292, 314 (2007).[23] Our caselaw on HRS § 480–13 elucidates the nature of the injuries cognizable under that statute.

■ As we stated in *Ai v. Frank Huff Agency, Ltd.*, "[w]hile proof of a violation of chapter 480 is an essential element of an

action under Sec. 480–13, the mere existence of a violation is not sufficient ipso facto to support the action; forbidden acts cannot be relevant *unless they cause private damage.*" 61 Haw. 607, 618, 607 P.2d 1304, 1312 (1980) (emphasis added), *overruled in part on other grounds by Robert's Haw. Sch. Bus. Inc. v. Laupahoehoe Transp. Co.*, 91 Hawai'i 224, 982 P.2d 853 (1999); *accord Sambor v. Omnia Credit Servs., Inc.*, 183 F.Supp.2d. 1234, 1244 (D.Haw.2002).

Although these cases suggest that Plaintiffs' allegation of injury is insufficient, because of the varying factual contexts of these cases a further examination of *Ai* and *Sambor* is in order.

#### i. *Ai*

Rawlings contends that based on *Ai*, there is no cognizable injury under HRS § 480–13 when plaintiffs are not required to make "payments beyond the amount of their existing obligation." (Citing *Ai*, 61 Haw. at 620, 607 P.2d at 1312).

In *Ai*, the plaintiffs brought suit against a collection agency for preparing a promissory note, which the plaintiffs executed and delivered to the defendant agency, that contained an "attorney's fees" provision that violated the debt collection laws.[24] The note provided that in the case of default, if the note were placed in the hands of an attorney for collection, the plaintiffs would have to pay an attorney's fee rate of "33 1/3% of the amount due thereon." *Ai*, 61 Haw. at 610, 607 P.2d at 1307. After making nineteen payments, the plaintiffs filed a complaint for declaratory judgment, alleging, *inter alia*, that the defendant "had represented in the August promissory note that the existing obligation of the plaintiffs might be increased by the addition of attorney's fees when in fact such fees

---

**23.** In *Cieri v. Leticia Query Realty, Inc.*, this court also required that the injury alleged under HRS § 480–13 be "fairly traceable to the defendant's actions." 80 Hawai'i 54, 66, 905 P.2d 29, 41 (1995). However, because Plaintiffs were not "injured" in the first place, causation is not at issue herein.

**24.** At the time the plaintiffs brought suit in *Ai*, HRS § 480–13 lacked any provision for consumer lawsuits. Rather, the plaintiffs' suit was based

on HRS § 480–13(a), which provided at the time, as it does now, that "[a]ny person who is injured in his business or property by reason of anything forbidden or declared unlawful by this chapter . . . may sue for damages. . . ." Although a different provision, both provisions require an "injury," and applying the concept of *in pari materia*, the meaning of injury as interpreted by the court in *Ai* may be of assistance when interpreting HRS § 480–13(b).

could not legally be added to the existing obligation," in violation of the former law on "collection agencies,"[25] and HRS chapter 480. *Id.* The circuit court granted the plaintiffs' motion for summary judgment on this count, declared the promissory note null, void, and unenforceable under HRS § 480–12,[26] and awarded damages to the plaintiffs in the amount of $1,000 plus costs as provided by HRS § 480–13(a)(1). *Id.* The holder of the promissory note appealed.

On appeal, the court reviewed both whether the plaintiffs had standing to bring the claim and whether they should recover on the merits. With respect to standing, the defendants had claimed that private persons did not have standing under chapter 480 to sue, and that even if they did, "a private plaintiff must allege and prove that he was injured in his business or property before damages will be assessed." *Id.* at 612, 607 P.2d at 1309. Taking a broad view of "injury in ... property," the court held that "it is sufficient that plaintiffs allege that injury occurred to personal property through a payment of money wrongfully induced" ... and "accordingly [found] plaintiffs' allegation of injury in their property sufficient for standing purposes under § 480–13." *Id.* at 613, 607 P.2d at 1310.

Proceeding to the merits, the court concluded that the representation in the promissory note indeed violated HRS § 443–44(8). However, the court stated:

> While proof of a violation of chapter 480 is an essential element of an action under § 480–13, the mere existence of a violation is not sufficient ipso facto to support the action; forbidden acts cannot be relevant unless they cause private damage. *Plaintiffs accordingly allege private injury in having made payments to defendant under a void promissory note.*

*Id.* at 618, 607 P.2d at 1312 (citation omitted) (emphasis added). In considering this allegation of injury, the court then turned to the enforceability of the promissory note under the voidness provision of HRS § 480–12, holding that while the attorney's fee clause was unenforceable, it could be severed and the remainder of the note enforced. *Id.* at 620, 607 P.2d at 1312. With respect to this remainder, the court stated:

> In view of the continuing obligation of the plaintiffs to make payments under the note severed of its offending clause, and *in view of the fact plaintiffs have actually made no payments beyond the amount of their existing obligation, we find no legal injury to plaintiffs cognizable under HRS § 480–13;* hence, plaintiffs were not entitled to an award of $1,000.

*Id.* at 620–21, 607 P.2d at 1312 (emphasis added).[27] The court thus affirmed the grant

**25.** The complaint was based on two laws under HRS chapter 443, the entirety of which was repealed in 1979, which was after the events of the lawsuit in *Ai.* 1979 Haw. Sess. L. Act 76, § 1. As quoted by the court, HRS § 443–44(8) provided in relevant part that:

> *No collection agency shall use* ... any conduct which is described as follows:
> (8) *Any representation that an existing obligation* of the debtor or alleged debtor *may be increased by the addition of attorney's fees,* investigation fees, service fees, and any other fees or charges *when in fact such fees or charges may not legally be added to the existing obligations* ...

*Ai,* 61 Haw. at 610 n. 2, 607 P.2d at 1307 n. 2 (quoting HRS § 443–44(8)) (emphasis added). The plaintiffs' HRS § 443–44(8) claim of misrepresentation was in turn based on HRS § 443–23, which barred certain fee provisions such as the one drafted by the defendant in *Ai.* HRS § 443–23, as quoted in *Ai,* stated that:

> A licensee *shall not* collect, or *attempt to collect, any* collection fee or *attorney's fee* or commission from any debtor; *provided however-*

*er, attorney's fee* or commission *may be collected after filing of a suit* against any debtor *and such fee* or commission *shall not be in excess of twenty-five per cent of the unpaid principal balance.*

*Ai,* 61 Haw. at 610 n. 3, 607 P.2d at 1307 n. 3 (quoting HRS § 443–23) (emphasis added). HRS § 443–23 is similar to today's HRS § 443B–9, entitled "Collection, attorney's, or commission fees; exception." HRS § 443B–9 (Supp.2006).

**26.** HRS § 480–12, entitled "Contracts void," provided then, as it does now, that "[a]ny contract or agreement in violation of this chapter is void and is not enforceable at law or in equity." HRS § 480–12 (1993).

**27.** It is apparent that the court viewed the "injury" element as requiring a different showing for purposes of standing than for the question on the merits regarding entitlement to relief. Although the court held that the plaintiffs in *Ai* sufficiently "allege[d] that injury occurred to personal property through a payment of money wrongfully

of declaratory judgment regarding the offending clause, but reversed and remanded for further proceedings based on its finding of no damages. *Id.* at 621, 607 P.2d at 1312.

Therefore, *Ai* tells us two things about the injury requirement under HRS § 480-13. First, a plaintiff sufficiently alleges injury for purposes of standing by alleging that the plaintiff was made to pay money that was "wrongfully induced," such as because the promissory note requiring payment included illegal terms. *Id.* at 614, 607 P.2d at 1310. Second, an individual suffers a cognizable injury allowing the recovery of damages under HRS § 480-13 when the individual is made to make payments pursuant to a void or illegal provision of some agreement.

Neither theory of injury applies to Plaintiffs in this case. Unlike *Ai*, where the lower court had ruled that the promissory note was void, Plaintiffs do not assert that any agreement between it and Rawlings violated the law. Rather, they focus on the mere fact that Rawlings attempted to collect, and Plaintiffs accordingly paid, some portion of the Plaintiffs' debts to HMSA. Because nothing in the underlying obligation was void, nor is it alleged that Rawlings's methods of collection were wrongful,[28] Plaintiffs' payment of the sums did not cause them any injury.

The essential difference between this case and *Ai* lies in the nature of the unfair trade practice at issue. In *Ai*, the collection agency had made, in the promissory note it prepared for the plaintiffs in that case to sign, a representation regarding attorney's fees that was not legally allowable under another provision—HRS § 443-23, *see supra* note 25—governing the collection of attorney's fees by collection agencies. The representation therefore violated HRS § 443-44(8), *see supra* note 25, and the promissory agreement was partially voided under HRS § 480-12. The underlying obligation was thus tainted by an illegal provision which would have extracted an illegal profit for the note holder. Once this provision was removed, the plaintiffs in *Ai* were required to pay on the remaining obligations of the note.

In contrast to the prohibition in *Ai* under the former "collection agencies" statute, the provision at issue here does not bear on the validity of the underlying obligation and involved no illegal representations by Rawlings such that payment on the obligation would have caused Plaintiffs to incur private damage. Rather, Plaintiffs had a valid loan agreement with HMSA, which was settled through Rawlings. Although Rawlings's activities in collecting money were in violation of HRS chapter 443B, the collection cannot be said to have "injured" Plaintiffs under *Ai. Cf. Zanakis–Pico*, 98 Hawai'i at 318, 47 P.3d at 1231 ("Deception [is] the evil that consumer fraud statutes seek to rectify. . . .").

### ii. *Sambor*

Although factually different from the instant case, *Sambor* confirms this view. In *Sambor*, the plaintiff asserted various violations of the FDCPA, and also argued that the defendant collection agency, Omnia, violated HRS chapter 443B by failing to register as a collection agency. 183 F.Supp.2d at 1235. Sambor had an account with Capital One Services, which was referred to Omnia for collection. Omnia called Sambor regarding her "delinquent account" and sent a follow-up letter indicating a balance due. *Id.* at 1236. After Omnia sent a return letter disputing the debt, Omnia stopped all further collection activity on her account. *Id.*

The court found that Omnia's letter violated the FDCPA and awarded statutory damages. The court also noted that Sambor had not shown that she suffered any actual damages, discounting the expenses she incurred in determining whether Omnia's activity was illegal as well as the postage costs incurred in sending Omnia a letter. *Id.* at 1241.

induced," *id.* at 613, 607 P.2d at 1310, it found no cognizable legal injury because they would not be required to pay any parts of the agreement that were void.

**28.** Echoing the "wrongfully induced" language of *Ai*, Plaintiffs assert that "Defendant induced Plaintiffs to pay it money by wrongfully demanding payment without registering in violation of section 443B-3." However, wrongful inducement, while not a term of legal precision, implies some wrongful method or act of deceit in extracting payment, none of which occurred here.

Finding that Omnia had violated the registration requirement, the District Court stated that "[t]o recover under section 480–13, however, a plaintiff must demonstrate *damages* caused by the violation." *Id.* at 1244 (citing *Ai* ) (emphasis added). Because Sambor had not established any actual damages as a result of Omnia's violation, the court denied her HRS § 480–13 claim. *Id.* at 1245.

Plaintiffs point out that *Sambor* is distinguishable from the present case because Sambor did not pay any money to the collection agent. While this is true, Plaintiffs nevertheless fail to show any damages as a result of their payment to Rawlings based on their obligations to HMSA. Just as the "attempt to collect" money in *Sambor* did not, without more, cause any damage to Sambor, likewise the actual collection, by Rawlings, of amounts Plaintiffs owed to HMSA did not cause any damage to Plaintiffs.[29] Therefore, Plaintiffs have not demonstrated that they were injured as a result of Rawlings's violation of HRS § 443B–3.[30] *See also Wiginton v. Pacific Credit Corp.*, 2 Haw.App. 435, 444, 445, 634 P.2d 111, 118, 119 (1981) (stating that injury exists, under prior version of HRS § 480–13, if "expenses were incurred because of the statutory violation and not because of a valid debt" and framing the issue in that case as whether the plaintiff "was wrongfully induced by the statutory violation(s) to pay money on a debt that was not owed or to incur expenses that would not otherwise have been incurred"); *cf. Fuller v. Pac. Med. Collections, Inc.*, 78 Hawai'i 213,

221, 891 P.2d 300, 308 (App.1995) (Acoba, J., dissenting in part) ("Because there can be no injury to Plaintiffs by the collection agency's failure to remit all attorney's fees collected on the judgment to its own attorney, the requirement that there be such injury under HRS § 480–13(b) is not satisfied.").

### b. *purposive and policy arguments*

Notwithstanding our conclusion that Plaintiffs have failed to demonstrate an injury based on our caselaw, the purposive and policy arguments advanced by Plaintiffs do not point to a different conclusion. In addition to the language of the statute, Plaintiffs assert that failing to find injury in this case would controvert the purpose of HRS chapter 443B. Specifically, Plaintiffs claim that if Rawlings's view that one is not injured for paying a valid debt were adopted, HRS chapter 443B would be rendered "virtually unenforceable by the victims of illegal collection activities." Plaintiffs also claim that limiting enforcement of chapter 443B to the Attorney General would needlessly burden the state.

First, requiring some injury beyond payment of a valid underlying obligation that was not wrongfully induced does not bar consumer enforcement of all of chapter 443B. Several provisions of that chapter concern methods of collection that are in themselves injurious. For example, HRS § 443B–9, an analogue of the attorney's fee statute at issue in *Ai, see supra* note 25, bars the collection of excessive fees by collection agencies.

**29.** Plaintiffs have also relied on *Keli v. Universal Fidelity Corp.*, No. Civ. 96–00366ACK, 1997 WL 3382042 (D.Haw. Feb. 25, 1997), an unreported decision of the United States District Court for the district of Hawai'i that preceded *Sambor*. The plaintiff in *Keli* had brought suit under the FDCPA and also asserted that the defendant had violated HRS § .443B by failing to be register. *Id.* at *1. The court awarded statutory damages on this latter count in the amount of $1,000 to the plaintiff. However, the court did not consider whether the plaintiff was injured or whether the plaintiff had suffered actual damages. In fact, the court in *Sambor* precisely noted this fact, and concluded that "[i]f statutory damages were awarded in *Keli* in the absence of actual damages, this court declines to follow *Keli* on this point." *Sambor*, 183 F.Supp.2d at 1245 n. 12.

**30.** In favor of their theory of injury, Plaintiffs also cite to several unpublished federal district court cases interpreting Connecticut's Unfair Practices Act, as well as federal district court cases interpreting the federal Fair Debt Collection Practices Act. However, Plaintiffs fail to provide any basis for importing foreign law into the interpretation of Hawai'i statutes, by, for example, showing that the laws are similar. Moreover, Plaintiffs do not demonstrate that these cases support their claim that money paid to an unregistered collection agent itself constitutes injury. Finally, the vast majority of state courts have held "that the claimant must establish that it suffered damages, harm, or loss as a result of the deceptive, unfair, or illegal act or practice under the consumer protection act before the court." *See* Annotation, *Right to Private Action Under State Consumer Protection Act–Preconditions to Action*, 117 A.L.R.5th 155 (2004).

HRS § 443B–15 (1993) prohibits collection by means of "any threat, coercion, or attempt to coerce," and expressly bars five iterations of such conduct. HRS § 443B–18 prohibits the "use [of] any fraudulent, deceptive, or misleading representation or means to collect, or attempt to collect, claims or to obtain information concerning a debtor or alleged debtor" and includes nine types of representations that are expressly prohibited. HRS § 443B–18 (Supp.2006). The title of remaining sections of chapter 443B express similar prohibitions on certain means of collecting: HRS § 443B–16 (1993), "Harassment and abuse"; HRS § 443B–17 (1993), "Unreasonable publication"; and HRS § 443B–19 (1993), "Unfair or unconscionable means."[31]

Second, denying individual enforcement of valid debts collected by an unregistered collection agency, where no injurious method of collection was alleged or shown, does not abrogate the purpose of chapter 443B. Justice Acoba, then an ICA judge, discussed the legislative history of this chapter in *Fuller*:

> In 1987, the legislature enacted chapter 443B to provide "general regulation of collection practices[,]" to "protect creditors from unscrupulous or dishonest collection agencies, and to protect debtors from abusive collection agencies[.]" Hse. Stand. Comm. Rep. No. 541, in 1987 House Journal, at 1355. Provisions like 443B–9 involve the general regulation of collection agencies and are enforceable by the director. . . .

78 Hawai'i at 221–22, 891 P.2d at 308–09 (Acoba, J., dissenting in part). This court has also discussed the purpose of chapter 480, which allows enforcement of chapter 443B:

> HRS chapter 480's paramount purpose was to "encourage those who have been *victim-*

*ized* by persons engaging in unfair or deceptive acts or practices to prosecute their claim," thereby affording "an additional deterrent to those who would practice *unfair* and *deceptive* business acts." Sen. Stand. Comm. Rep. No. 600, in 1969 Senate Journal, at 1111; Hse. Stand. Comm. Rep. No. 661, in 1969 House Journal, at 882–883. . . .

The foregoing statutory construction is consistent with HRS chapter 480's function as a mechanism for abating practices *that potentially injure consumers* in general.

*Zanakis–Pico*, 98 Hawai'i at 317, 47 P.3d at 1230 (emphases added).

Although a consumer may sue an unregistered agency who also causes the consumer some injury—either by charging a prohibited fee, *e.g.* HRS § 443B–9, or by attempting to collect in a way that causes non-economic injury-without an "injury," enforcement of HRS § 443B–3 is in the hands of the Attorney General and the Director of the Office of Consumer Protection. HRS § 480–2(d) (1993). As stated by then-Judge Acoba in *Fuller*, HRS § 443B–3, like the provision analyzed in *Fuller*, "is one of those sections in chapter 443B concerned with the general regulation of collection agencies, and not . . . a section such as HRS §§ 443B–15 to–19, which has to do with prohibited acts involving debtors," and which therefore allows for individual enforcement. 78 Hawai'i at 222, 891 P.2d at 309 (Acoba, J., dissenting in part). As such, Rawlings's conduct in violation of HRS § 443B–3, while injurious to the state's interest in regulation of collection agencies, did not directly harm Plaintiffs.

Therefore, Plaintiffs have not demonstrated any "injury" and may not bring suit for their claim under HRS § 480–13(b).

---

**31.** Similar observations were made by Justice Acoba, who wrote a dissenting opinion in *Fuller*. Then–ICA Judge Acoba argued that the structure of chapter 443B supported a conclusion that some provisions were more amenable to individual enforcement than others:

> Chapter 443B (Supp.1992) is organized as follows: (1) definitions (HRS § 443B–1), (2) declaration of the powers and duties of the director of commerce and consumer affairs (HRS § 443B–2), (3) provisions relating to requirements for operating a collection agency

> (HRS §§ 443B–3 to–6), (4) provisions relating to agency clients (creditors) and HRS § 443B–9 (HRS §§ 443B–8 to –11), (5) provisions relating to criminal prosecution and other remedies (HRS §§ 443B–12 to–14), (6) provisions setting forth prohibited acts against debtors (HRS §§ 443B–15 to–19), and (7) the provision that any violation of the chapter is an unfair method of competition and an unfair or deceptive act (HRS § 443B–20).

> 78 Hawai'i at 222 n. 9, 891 P.2d at 309 n. 9 (Acoba, J., dissenting in part).

## IV. *CONCLUSION*

Based on the foregoing, we vacate the circuit court's interlocutory order and remand to the circuit court with instructions to enter an order granting summary judgment in favor of Rawlings.